FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA   2013 JUL 17 PM 3: 36
FORT MYERS DIVISION

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

BILLY RAY KIDWELL
5064 Silver Bell Drive
Port Charlotte, FL. 33948,
      Plaintiff
And

TANA KIDWELL
5064 Silver Bell Drive
Port Charlotte, FL. 33948,
      Plaintiff
And

TOM HUBBERT
121 Brownhill Lane
Ringgold, Georgia, 30736
      Plaintiff
And

LINDA HUBBERT
121 Brownhill Lane
Ringgold Georgia, 30736
      Plaintiff

      v.

MICKY ARISON
OWNER, AND CEO,
CARNIVAL CORPORATION
DBA Carnival Cruise Lines
3655 N.W. 87th Ave.
Miami, Fl. 33178,
      Defendant

And

CARNIVAL CORPORATION
DBA Carnival Cruise Lines
3655 N.W. 87th Ave.
Miami, Fl. 33178,
      Defendant

Case No.

2: 13 -cv- 536 -FtM- 38 DNF

**CIVIL RIGHTS COMPLAINT**

**_With JURY DEMAND_**

```
And                                    :
                                       :
"UNKNOWN AGENTS" OF THE CENTER         :
FOR DISEASE CONTROL AND                :
PREVENTION,                            :
1600 Clifton Road                      :
Atlanta, Georgia 30333,                :
          Defendant                    :
                                       :
And                                    :
                                       :
James I. Cohn                          :
U.S. District Judge                    :
c/o 299 East Broward Boulevard         :
Fort Lauderdale, FL. 33301             :
          Defendant                    :
                                       :
And                                    :
                                       :
Barry S. Seltzer                       :
U.S. Magistrate                        :
c/o 299 East Broward Boulevard         :
Fort Lauderdale, FL. 33301             :
          Defendant                    :
                                       :
And                                    :
                                       :
Foreman Friedman P.A.                  :
2 South Biscayne Boulevard             :
Suite 2300                             :
Miami, FL. 33131                       :
          Defendant                    :
                                       :
And                                    :
                                       :
Attorney Catherine J. MacIvor          :
c/o Foreman Friedman P.A.              :
2 South Biscayne Boulevard             :
Suite 2300                             :
Miami, FL. 33131                       :
          Defendant                    :
                                       :
                                       :
And                                    :
                                       :
                                       :
_____   :
```

```
Attorney Aleksey Shtivelman      :
c/o Foreman Friedman P.A.         :
2 South Biscayne Boulevard        :
Suite 2300                        :
Miami, FL. 33131                  :
         Defendant                :
                                  :
                                  :
                                  :
And                               :
                                  :
Attorney Brian H. McGuire         :
c/o Foreman Friedman P.A.         :
2 South Biscayne Boulevard        :
Suite 2300                        :
Miami, FL. 33131                  :
         Defendant                :
```

## I. PRELIMINARY STATEMENT

1. Plaintiffs come to this Court because of three Substantial Constitutional Issues, *Under Color of Law*, violating Plaintiffs Constitutional Rights, as secured by 42 U.S.C. §1983.

2. The first issue is Defendants, Micky Arison, and Carnival Cruise Lines, by means of the Law Firm of Foreman Friedman, P.A., and the named Attorneys in this Lawsuit, coming to the home, and personal residence, of Plaintiff(s) Tana Kidwell, and Billy Kidwell, at 5064 Silver Bell Drive, Port Charlotte, Florida, in Charlotte County Florida, on November 7, 2012, in a Criminal Scheme[1], Obstructing all four (4) named Plaintiffs in exercising their Fundamental Constitutional Right(s) of

---

[1] The Defendants in this case have knowingly, willingly, and intentionally violated Title 18 § 1503, and also the Omnibus Clause of Title 18 § 1503, as described herein, intentionally violating the Constitutional Rights of the Plaintiffs, Under Color of Law.

antop

"*Meaningful*" Access to the Courts, and to Due Process of Law, in a lawsuit against Carnival Cruise Lines.

3. Second is the massive Bribing of the United States District Court in Miami, by Defendants Micky Arison, and the Carnival Corporation, in direct violation of <u>Caperton</u> <u>v.</u> <u>A. T. Massey</u> <u>Coal Co., Inc.</u>, 556 U.S. (2009), denying Plaintiffs their constitutional right to an Impartial Hearing Body, and to Due Process of Law.

4. Third is the bribing, and/or wrongful "*Influence*" of the Carnival Corporation, over the Center for Disease Control[2], resulting in Plaintiffs being denied "*Equal Protection of the Law*" as the CDC violates the Public Health Service Act, 42 U.S.C. Section 264, endangering America's Ports, and endangering hundreds of thousands of Carnival Passengers, *including* *Plaintiffs*, to repay Carnival for "*favors*", and/or, in response to political pressure from Politicians "*bribed*" by Carnival Cruise Lines.

5. As a result of the Defendant's Intentional Violation of the four (4) Plaintiff(s) Constitutional Rights in Port Charlotte, Florida, the *Pro Se Plaintiffs* file this Civil Rights Action, in which the *Pro Se Plaintiffs* seek relief for the violation of their rights secured by 42 U.S.C. §1983, and the violation of Plaintiff(s) First, Fifth, and Fourteenth Amendment Rights.

---

[2] The United States Center for Disease Control is hereinafter referred to as simple the "CDC".

6. This unlawful conduct has been undertaken with the intention of Obstructing, Chilling, Deterring, and Retaliating against the *Pro Se Plaintiff(s)* for engaging in the Constitutionally Protected Activity, of seeking to exercise their Fundamental Constitutional Right(s) of "*Meaningful*" Access to the U.S. District Court in Miami, to seek redress from Carnival Cruise Lines.

7. Plaintiffs seek "***Heightened Judicial Scrutiny***" of the intentional violations of their Fundamental Constitutional Right(s) of "*Meaningful*" Access to the Courts, as required by Dunn v. Blumstein, 405 U.S. 330, 336-337, and Tennessee v. Lane, 541 U.S. 509 (2004).

8. Plaintiffs seek Injunctive Relief, as well as Special, Compensatory, and Punitive Monetary Damages against Defendants, as well as an award of costs, and all other relief this Court deems just, and proper.


## II. JURISDICTION

9. This action is brought pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and the First, Fifth, and Fourteenth Amendments to the United States Constitution.

10. Venue is laid within the United States District Court for the Middle District of Florida, at Fort Myers, since the Plaintiff-Victims, Billy Kidwell, and Tana Kidwell, reside in Port Charlotte, Florida.

11. Venue in the United States District Court for the Middle District of Florida, at Fort Myers, is proper because Plaintiffs Tom and Linda Hubbert have strong ties to Port Charlotte, Florida, occasionally living there, staying with Plaintiff(s) Billy Kidwell, and Tana Kidwell in Port Charlotte at 5064 Silver Bell Drive, and visiting Tom Hubbert's elderly mother, who resides in Port Charlotte, Florida.

12. The Civil Rights Violations, and events giving rise to the claims described herein, occurred in Port Charlotte, Florida, in Charlotte County, Florida, within the boundaries of the Middle District of Florida.

13. Three (3) of the *Pro Se Plaintiffs* are elderly, and deathly ill, and cannot travel to a Court further than Fort Myers, Florida without endangering their lives, and violating their doctor's **ORDERS**, and/or Medical Advice.

14. Therefore the United States District Court at Fort Myers, Florida is the **ONLY** Constitutionally Allowed Venue for this Case.


### III. INTRODUCTION

15. One of the most sacred Constitutional Rights is "*Meaningful*" Access to the Courts, and the right to petition the government for redress before an Honest, Impartial, *Un-bribed*, Hearing Body.

16. While America is at war, and America's Troops are giving their lives, and shedding their blood, to promote freedom, and

the ideas this country was founded on, the Defendants are
subverting our government, *and operating lawlessly*, making a
farce, and mockery, of the Constitution to *"maximize Profits"*,
as Defendants Obstruct *Pro Se Carnival Cruise Victims* in
exercising *"Meaningful"* Access to the Courts, and deny citizens
the protection of Agencies, entrusted with protecting them.

   17. This Court has a heightened <u>DUTY</u> to strongly protect such
a Fundamental, and Important, Constitutional Rights.

   18. The four (4) Plaintiffs in this case are proceeding *Pro Se*
and seek a very liberal construction of their action pursuant to
the doctrine of <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).


## IV. PARTIES

19. Plaintiff, Billy Kidwell, is an Elderly, Deathly-Ill,
Resident of the State of Florida, and a 100% Service-Connected
Disabled Veteran. At all times related to this lawsuit this
Plaintiff was a resident of Florida, living in Charlotte County
Florida at 5064 Silver Bell Drive, Port Charlotte, Florida
33948.

20. Plaintiff, Tana Kidwell, is a resident of the State of
Florida, and at all times related to this lawsuit was a resident
of Florida, living in Charlotte County Florida at 5064 Silver
Bell Drive, Port Charlotte, Florida 33948.

21. Plaintiff, Tom Hubbert, is an Elderly, Severely Disabled,
resident of the State of Georgia, frequently residing in Port

Charlotte Florida, with his brother Plaintiff Billy Kidwell. His
address is 121 Brownhill Lane, Ringgold, Georgia, 30736.

22. Plaintiff, Linda Hubbert, is an Elderly, Severely Disabled,
resident of the State of Georgia who also often resides in Port
Charlotte with the Kidwell Plaintiffs. Her address is 121
Brownhill Lane, Ringgold, Georgia, 30736.

23. Defendant, Micky Arison, at all times in this lawsuit was
the CEO of the Carnival Corporation. His address is; Micky
Arison, Chairman of the Board of Directors, Carnival
Corporation, 3655 NW 87th Avenue, Miami, Florida 33178-2428.

24. Defendant, Carnival Corporation, is controlled by Micky
Arison, and incorporated in Panama, in a scheme to avoid United
States Taxes, and Laws. This Defendant is authorized to do
business in Florida, as a Foreign For Profit Corporation. The
address for this Defendant is; Carnival Corporation, 3655 NW 87th
Avenue, Miami, Florida 33178.

25. Defendant, "Unknown Agents" of the Center for Disease
Control and Prevention, is each CDC Officer, _no matter how high_,
and/or each employee, agents, and/or individual, in the CDC,
_including in the CDC Vessel Sanitation Program_, including the
CDC Vessel Sanitation Inspectors that inspected the Carnival
Legend from May 2011 to December 2012, that falsified CDC
Inspection Records for the Carnival Legend, and/or failed to
issue "Do Not Sail Orders" for the Carnival Legend, as required
by the CDC's OWN Vessel Sanitation Program Manual.

26. Defendant, "Unknown Agents" of the Center for Disease
Control and Prevention, specifically includes all CDC Officials,

and/or, employees, and inspectors, that knew, from the CDC
Inspection of the Carnival Legend on May 8, 2011, that Carnival
had falsified the Log Form for the Whirlpool Spa on a daily
basis, and did not inform Carnival Passengers, including
Plaintiffs, that the Whirlpool Spa Records on the Carnival
Legend had been falsified on a daily basis.

27. Defendant, "*Unknown Agents*" of the Center for Disease
Control and Prevention, specifically includes all CDC Officials,
and/or, employees, and inspectors, that knew from the May 8,
2011 CDC Inspection of the Carnival Legend, that Carnival had
painted the potable water tanks on the Legend, both Port, and
Starboard, on March 19, 2011 without using properly trained
personnel, and did not properly apply, dry, or cure the two-part
Epoxy Coating System posing an extremely serious Imminent Health
Risk to thousands of passengers, including the Pro Se
Plaintiffs, and a long term health risk for cancer.

28. Defendant, "*Unknown Agents*" of the Center for Disease
Control and Prevention, specifically includes all CDC Officials,
and/or, employees, and inspectors that knew the potable water on
the Carnival Legend tested Positive for coliforms on August 28,
2011, and did not have a documented follow-up E-Coli Test, as
REQUIRED by CDC rules, and despite knowing this failed to inform
passengers, *including the Plaintiffs*, and failed to issue a boil
alert, as REQUIRED by the CDC's OWN rules, and failed to issue
"*Do Not Sail Orders*", as REQUIRED by the CDC's OWN rules,
endangering thousands of Carnival Legend Passengers, including
Plaintiffs, and causing very substantial harm to Plaintiffs.

29. Defendant, "*Unknown Agents*" of the Center for Disease
Control and Prevention, specifically includes all CDC Officials,

and/or, employees, and inspectors, that knew that from May 8,
2011 to November 11, 2012 the Recreational Water Facilities on
the Carnival Legend did not have Chart Recorders, Electronic
DATA Loggers, and therefore did not have proper pH Testing, or
Documentation, posing a very serious Imminent Health Risk to
roughly 165,672 Carnival Legend Passengers, on 78 Carnival
Legend Cruises, from May 8, 2011 to November 11, 2012, which
included the *Pro Se Plaintiffs*.

30. Defendant, "*Unknown Agents*" of the Center for Disease
Control and Prevention, is being sued pursuant to the doctrine
of <u>Blevins</u> <u>v.</u> <u>Six Unknown Named Agents</u>, 403 U.S. 388 (1971).
This defendant's address is "*Unknown CDC Agents*" c/o United
States Center for Disease Control, 1600 Clifton Road, Atlanta,
Georgia 30333.

31. Defendant, James I. Cohn, is a United States District Court
Judge in the United States District Court in Miami. This
Defendant has been bribed by Defendants Micky Arison, and
Carnival Cruise Lines, and to repay those bribes has engaged in
Obstruction, Misprision of Felonies, and intentional violations
of the Plaintiff's Constitutional Rights, including trying to
cause the death of the *Pro Se Litigants*, severely harming them,
<u>in the clear absence of all jurisdiction to do so</u>, as described
in <u>Mireless</u> <u>v.</u> <u>Waco</u>, 112 S. Ct. 286, 288 (1991), and without
Subject Matter Jurisdiction, as described in <u>Dykes</u> <u>v.</u> <u>Hosemann</u>,
776 F. 2d 942, 947-948 (11th Cir. 1985). This Defendant's address
is James I. Cohn, c/o 299 East Broward Boulevard, Fort
Lauderdale, FL. 33301.

32. Defendant, Barry S. Seltzer, is a United States District
Court Magistrate in the United States District Court in Miami.

This Defendant has been bribed by Defendants Micky Arison, and
Carnival Cruise Lines, and to repay those bribes has engaged in
Obstruction, Misprision of Felonies, and intentional violations
of the Plaintiff's Constitutional Rights, including trying to
cause the death of the *Pro Se Litigants*, severely harming them,
in the clear absence of all jurisdiction to do so, as described
in Mireless v. Waco, 112 S. Ct. 286, 288 (1991), and without
Subject Matter Jurisdiction, as described in Dykes v. Hosemann,
776 F. 2d 942, 947-948 (11th Cir. 1985). This Defendant's address
is Barry S. Seltzer, c/o 299 East Broward Boulevard, Fort
Lauderdale, FL. 33301.

33. Defendant, Foreman Friedman P.A., is a Miami Law Firm
employed by Carnival Cruise Lines to engage in Criminal Conduct,
using any tactic, no matter how dishonest, *or illegal*, to
**OBSTRUCT** the *Pro Se Plaintiffs*, in exercising their Fundamental
Constitutional Right(s) of "*Meaningful*" Access to the Courts,
and to Due Process of Law, against the Carnival Corporation.
This Defendant's address is; Foreman Friedman P.A., 2 South
Biscayne Boulevard, Suite 2300, Miami, FL. 33131.

34. Defendant, Attorney Catherine J. MacIvor, is an Attorney,
and Partner, in the Law Firm of Foreman Friedman, P.A., employed
by Carnival Cruise Lines to engage in Criminal Conduct, using
any tactic, no matter how dishonest, *or illegal*, to **OBSTRUCT** the
*Pro Se Plaintiffs*, in exercising their Constitutional Right(s)
of "*Meaningful*" Access to the Courts, and to Due Process of Law,
against the Carnival Corporation. This Defendant's address is;
Attorney Catherine J. MacIvor, c/o Foreman Friedman P.A., 2
South Biscayne Boulevard, Suite 2300, Miami, FL. 33131.

35. Defendant, Aleksey Shtivelman, is an Attorney in the Law Firm of Foreman Friedman, P.A., employed by Carnival Cruise Lines to engage in Criminal Conduct, using any tactic, no matter how dishonest, *or illegal*, to **OBSTRUCT** the *Pro Se Plaintiffs*, in exercising their Constitutional Right(s) of "*Meaningful*" Access to the Courts, and to Due Process of Law, against the Carnival Corporation. This Defendant's address is; Attorney Aleksey Shtivelman, c/o Foreman Friedman P.A., 2 South Biscayne Boulevard, Suite 2300, Miami, FL. 33131.

36. Defendant, Brian H. McGuire, is an Attorney, in the Law Firm of Foreman Friedman, P.A., employed by Carnival Cruise Lines to engage in Criminal Conduct, using any tactic, no matter how dishonest, *or illegal*, to **OBSTRUCT** the *Pro Se Plaintiffs*, in exercising their Constitutional Right(s) of "*Meaningful*" Access to the Courts, and to Due Process of Law, against the Carnival Corporation. This Defendant's address is; Attorney Brian H. McGuire, c/o Foreman Friedman P.A., 2 South Biscayne Boulevard, Suite 2300, Miami, FL. 33131.

## V. JURY TRIAL

37. Plaintiffs seek a Jury Trial.

## VI. FACTS

### (A) Defendant's History Requiring "Meaningful" Punitive Damages

38. Ted Arison, an Israeli with a strong hate for America, a hate, and disrespect, for America's Laws, and especially for

America's Taxes, came to America, *because of America's Business Opportunities*, keeping his Israeli Citizenship.

39. Ted Arison founded Carnival Cruise Lines, as a **PANAMA** Corporation in 1972, to defraud the United States Government out of Billions of dollars in taxes, shirt America's Laws, and personally enrich himself, and his children, while funneling very substantial amounts, of the Billions of Dollars the United States is swindled out of, to the Country of Israel.

40. Ted Arison set a *"Policy"* for Carnival Cruise Lines to maximize profits by avoiding maintenance, and safety costs, for Carnival Ships by running them non-stop, and by not taking Carnival's Ships out of service after cruises to conduct regular maintenance, and proper cleaning, resulting in Carnival operating filthy, and sometimes disease-laden, unsafe ships in dire need of repair.

41. Ted Arison set a *"Policy"* for Carnival Cruise Lines to maximize profits by bribing United States Government Politicians, and/or U.S. Government Officials, with *"influence"* over Cruise Line Regulatory Agencies, such as the Center for Disease Control, in direct violation of Title 18 § 201.

42. Ted Arison set a *"Policy"* for Carnival Cruise Lines to maximize profits by avoiding the cost of tows, and rescues, for Carnival's unkempt ships, by bribing, with *"donations"* American Politicians, and/or Government Officials with *"influence"* over the United States Coast Guard, so that Carnival could use the United States Coast Guard like a Private Towing Service, despite Carnival being a Foreign, Panama Corporation.

43. Ted Arison set a "*Policy*" for Carnival Cruise Lines to maximize profits by avoiding the liability, and massive costs, of providing medical care for the thousands, and thousands, of Carnival Passengers that Carnival has knowingly made ill with Highly Infectious Diseases, such as the Norovirus, and/or E-Coli, _including Plaintiffs_, caused by Carnival's Unethical Business Practices, "*cutting corners*" with Filthy Ships.

44. Ted Arison set a "*Policy*" for Carnival Cruise Lines to maximize profits by dumping thousands of sick passengers at America's Ports, _without medical care_, in violation of The Public Health Service Act, 42 U.S.C. Section 264, endangering America's Port Cities, cities, and towns, those passengers, with Highly Infectious Diseases, return to.

45. Since many of the Passengers made sick by Carnival's Deplorable Business Practices are elderly, and on government programs, such as Social Security, Medicare, Medicaid, or under the care of the United States Military, or the United States Department of Veterans Affairs, the American Taxpayer is stuck with a bill for hundreds of millions of dollars in medical care, taking care of thousands of sick passengers, Carnival Cruise Lines intentionally made ill, with Carnival's Unethical Business Practices.

46. The Arison Family set a "*Policy*" for Carnival Cruise Lines to Intentionally violate America's Environmental laws, illegally dumping Oily Filthy Bilge Water from Carnival Ships in Florida's Pristine Waters, and then lying to government investigators, to the United States Coast Guard, while falsifying detection equipment, and Government Records, to Obstruct the investigation of Carnival's Environmental Violations.

47. In 2002 Defendants Micky Arison, and Carnival, pled Guilty to six (6) felony counts of Obstruction, which includes the Criminal Conduct described in paragraph 46 above, and was fined Eighteen Million Dollars, which the news media described as being "*Chump Change*", since **Micky Arison, and Carnival Cruise Lines, had illegally profited, far more than the fine**, making Carnival's Policy of Obstruction, and Criminal Conduct, very, very, profitable, and encouraging Carnival to continue its disrespect for America's Laws. [Emphasis added.]

48. The Arison Family set a "*Policy*" for Carnival Cruise Lines to falsify Carnival Records, and Reports, relied on by United States Government Inspectors, including the Center for Disease Control's Vessel Sanitation Program, and the United States Coast Guard, committing Federal Felonies of Obstruction.

49. The Arison Family set a "*Policy*" for Carnival Cruise Lines, and Law Firms, and Attorneys hired by Carnival Cruise Lines, to commit any act, no matter how appalling, dishonest, <u>or illegal</u>, to Criminally Obstruct *Pro Se Carnival Cruise Line Victims*, *including Plaintiffs*, in exercising their Fundamental Constitutional Right of "*Meaningful*" Access to the Miami United States District Court, to seek redress from the Arison Family, and/or Carnival Cruise Lines.

50. The Arison Family, and Carnival Cruise Lines, Criminal Business Practices consist of victimizing a class of Carnival Cruise Victims, consisting of the elderly on Social Security, and America's Disabled Military, and Combat Veterans, unable to afford to hire attorneys to protect their rights, *as in the instant case*.

51. As a result of these "*Policies*", freely violating laws, defrauding Carnival Cruise Victims, and defrauding the United States Government out of Billions, and Billions of dollars, the Arison Family, and Carnival Cruise Lines are just as much of a Crime Family, as any Italian Mafia, requiring "*Meaningful*" Punitive Damages to "*chill*" their ongoing, lawless, conduct.

52. Defendant, Micky Arison, has made as much as 1.86 Billion Dollars Profit in a year off his Carnival Stock.

53. On November 29, 2012 the Miami Daily Business Review reported that Defendant, Micky Arison, awarded himself a "*Special Year-End Dividend*" of Ninety Million Dollars ($90,000,000.00).

54. The above facts explain why the Eighteen Million Dollars in Punitive Damages against the Carnival Corporation in 2002 for Felony Obstruction was considered a joke by the news media, and by the Cruise Industry, and has had no effect in Punishing Carnival, or "*Chilling*" Carnival's _ongoing_ illegal conduct, resulting in Carnival being before the Court for Obstruction _again_ in this case.


## (B) Bribing the U.S. District Court in Miami

55. The Arison Family realized that by cutting corners, and running filthy, disease-laden ships non-stop, that very large numbers of passengers could become sick, and/or harmed, and end up filing suit against Carnival, and eating into Carnival's profits.

56. To reduce Carnival's loss, *due to passengers harmed by Carnival's Sleazy, and often illegal Business Practices suing Carnival*, Ted Arison realized he would have to control the Court System, or at least very strongly influence the Courts where Carnival Victims would sue.

57. *First*, Carnival would have to restrict the Courts where victims could sue, and engage in **FORUM SHOPPING**, since it is easier, and far less costly, to bribe one or two Courts, then to have to bribe Courts all over America, so the Arison Family came up with a scheme to **FORUM SHOP**, and restrict Carnival's Victims to being forced to sue Carnival in Miami, despite Carnival being a **PANAMA** Corporation.

58. Carnival, *in very small print*, put a Passenger Ticket Contract on Carnival Tickets requiring passengers to lose many of their Constitutional Rights, while setting a process for suing so restrictive, that passengers intentionally harmed by Carnival, and passengers with legitimate claims against Carnival, are substantially obstructed, and "*chilled*", in seeking damages from Carnival, and must sue in Miami.

59. Then to avoid paying billions of dollars in damages, *for intentionally harming such large numbers of passengers*, Carnival set a "*Policy*" of massively bribing the Miami United States District Court by "*Enhancing*" every aspect of life in Miami, where the Court is, where many of the judges reside, and where the families of the Miami U.S. District Court Judges also directly benefit from Carnival Cruise Lines.

60. Ted Arison established the National Foundation for Arts in Miami, knowing some of Miami's Federal Judges, *and/or their*

*families*, are interested in the arts, and knowing that this action would *strongly* "Influence" those Miami Judges.

61. Ted Arison brought professional basketball to Miami in 1988 by forming the extremely popular NBA Miami Heat in Miami, knowing some of Miami's Federal Judges, and/or their families, are Obsessed Sports Fans, and knowing that this action would *strongly* "Influence" those Miami Judges.

62. Despite costs being far less in **PANAMA**, and properties costing only pennies on the dollar in **PANAMA**, *compared to Miami*, and labor being much cheaper in **PANAMA**, and despite Carnival Cruise Lines being a **PANAMA CORPORATION**, the Arison Family put Carnival Cruise Line's Headquarters, and the Headquarters for the Carnival Corporation, in Miami, creating tens of thousands of jobs, at a much higher labor cost, to further "Enhance" Miami, and mainly to "Influence", *and further* **BRIBE**, the Miami United States District Court, and thereby restrict lawsuits, and awards, against Carnival, with a "favorable" Court.

63. Carnival Cruise Lines, and the Arison Family, set up a number of Non-Profits, Charities, and Foundations to **TARGET** the City of Miami Area, and "Enhance" life in Miami, and its surrounding communities, donating hundreds of millions of dollars over the years, to make sure every Federal Judge, and every employee in the United States District Court in Miami, substantially benefited in some way from the Carnival Corporation, and/or the Arison Family.

64. According to just one Carnival Charity, the Carnival Foundation's Website, in just the past five years Carnival has spent MORE than Thirty Million Dollars ($30,000,000.00) to

"*Enhance*" life in the Miami Area, *including Fort Lauderdale, Florida*, despite Carnival Being a **PANAMA** Corporation.

65. Ted Arison, proved his hate for America, and America's Tax Laws, by incorporating in Panama to shirk paying taxes, and by substantially "*donating*" to the Senate Transportation Committee, to make sure the Unfair Tax Loopholes, Carnival used to shirk taxes, were not closed.

66. In 1990 Ted Arison further demonstrated his hate for America, and American Taxes, by renouncing his American Citizenship, and returning to Israel, in a scheme to avoid paying Estate Tax in the United States.

67. Ted Arison clearly had no love for America, and no reason, *whatsoever*, for pouring such massive amounts of money into a city in a country he hates so much that he renounced his citizenship in that country, and incorporated his business in Panama, other than to strongly, and massively **BRIBE** the Court where all his victims were forced to go to sue him.

68. The United States Supreme Court **AGREES** with this Theory of Bribery by Carnival Cruise Lines, and has stated in Caperton v. A. T. Massey Coal Co., Inc., 556 U.S. (2009) that **"If a Corporation, in that case A.T. Massey Coal, _spends a mere Three Million Dollars in a whole state_ to influence a court, that it violates the other parties Due Process Rights."**

69. Micky Arison, and Carnival Cruise Lines, went light years beyond the Due Process Violations in Caperton, **spending ten times as much money in Miami, as Massey Coal spent in the whole State of West Virginia**, donating to Arts, Museums, Hospitals,

Colleges, and to every charity in Miami, making sure the
Carnival Corporation "*enhanced*" the life of every judge in the
Miami U.S. District Court, "*enhancing*" the lives of Court
Employees, and "*enhancing*" the lives of the families of the
Miami U.S. District Court Judges. [Emphasis added.]

70. There is no record in history of as much money being spent,
and targeted, to just one city, or area, to influence the Courts
in that city, as Micky Arison, and the Carnival Corporation, has
spent to buy the United States District Court in Miami.

71. Plaintiffs submit that it blatantly violates their Due
Process Rights, their Right to an Impartial Hearing Body, their
right of "*Meaningful*" Access to a Court for Redress, and is the
most flagrant, outrageous, farce, and Mockery of Justice, in
history, to allow a **PANAMA** Corporation, *created by a person with
a deep hate for America*, spend hundreds of millions of dollars
to completely bribe a city, and then force Carnival Cruise
Victims to sue in the very Court, **Carnival Owns**.


*(C) An Example of How a Highly Bribed Court Operates*

72. In 2002 Micky Arison, and the Carnival Corporation, pled
guilty to six (6) felony counts of filing false statements with
the United States Coast Guard, **FELONY FEDERAL OBSTRUCTION**, and
received a *mere* Eighteen Million Dollar Fine, **thanks to Bribing
the Miami U.S. District Court**, despite Carnival making Hundreds
of millions of dollars from its illegal conduct.

73. According to the United States Attorney Criminal Conduct,
and Criminal Obstruction, Falsifying Records, Tampering with

Data recorders, Lying, and Concealing Evidence was "*Systematic within the Carnival Corporation*", Carnival operated like a Mafia Crime Family.

74. The Miami U.S. District Court was the laughing stock of the world as the Associated Press, Newspapers, Television Stations, and News Media all over the world pointed out, that the tiny Eighteen Million Dollar Fine was "***Chump Change***", and a joke, making it extremely **PROFITABLE** for Micky Arison, and the Carnival Corporation, to freely commit Federal Crimes, *at whim*.

75. Cruise ships were suspected of causing 172 pollution spills from 1991 through 2000, dumping Oil, Hydraulic Fluid, Plastic, Paint, Food and other waste in America's Waterways according to the United States Coast Guard.

76. The United States Government spent more money investigating Carnival then the fine was for intentionally committing Six Willful Acts of Criminal Obstruction, making a joke out of the judicial process in the Miami U.S. District Court, proving how substantially Carnival has **BRIBED** Federal Officials in the Miami Area, including Federal Judges in the Miami Area, with all the "*Enhancing*" of their lives with a Sports Team, and  "*Donating*" ten times as much money in the Miami Area, than Massey Coal spent in the entire state of West Virginia.


*(D) The Need for Adequate Punitive Damages*


77. Micky Arison has become the richest man in Florida by violating America's Laws, and shirking Taxes, with his Carnival Corporation, while Carnival rakes in obscene profits.

78. Despite the Insignificant *"Punitive"* Eighteen Million Dollar Plea Agreement against Carnival in 2002, *which according to the highly* **BRIBED** *Miami United States District Court was intended to punish the Defendant(s), Micky Arison, and Carnival Cruise Lines, for a long list of* **FELONY** *Criminal Conduct*, both of those Defendants have continued their extremely profitable *"Policy"* of Felony Criminal Conduct in this case, continuing to falsify Official United States Government Records, **OBSTRUCTING** *Pro Se Carnival Cruise Victims* in their Access to the Courts, and committing outrageous Criminal Acts.

79. All this demonstrates a **Pro Bono Publico** need for *"Meaningful"*, and Adequate, Punitive Damages in this case.

### (E)  The Ongoing Falsification of Official Records by Carnival

80. Carnival Legend Whirlpool/Spa Backwashing Forms are used by Carnival to prove to the United States Center for Disease Control, and to the United States District Court in Miami when Carnival is sued, that backwashing of the Whirlpool/Spas was personally viewed by a Trained Individual to assure the backwash continued, until clear water could be viewed on the sand filter, as required by CDC Rules.

81. On May 8, 2011 during a United States Center for Disease Control Vessel Sanitation Inspection on the Carnival Legend it was discovered that Carnival had printed a Form for the Daily Backwashing of the Whirlpool/Spa Backwashing on which the form fraudulently claimed that the backwashing continued until clear water could be viewed on the sand filter.

82. An investigation by the CDC Inspectors discovered that this Printed Backwashing Form by Carnival, that was signed Daily by a Carnival Legend Engineer, was **FRAUDULENT**, and that Carnival did not have anyone personally viewing the backwashing of the Spa Water each day, **as Carnival falsely claimed on the Form**, and that Carnival actually had no idea if the backwashed water was clear on the sand filter, and therefore safe for human use, on the Carnival Legend.

83. That the Defendants Micky Arison, and Carnival Cruise Lines, were, *once again*, engaging in **OBSTRUCTION**, falsifying Official Records that would be used by United States Regulatory Agencies, and as an Exhibit in the United States District Court.

84. While not having an employee actually view the Whirlpool/Spa Water Backwashing, as required by CDC Rules, and intentionally **FALSFYING** Carnival Legend Records, reduced operating costs for Defendants, Micky Arison, and Carnival Cruise Lines, it endangered the thousands of passengers traveling on the Carnival Legend, *including Plaintiffs*, since there was no honest record of the Whirlpool/Spa Backwashing.

85. This "*Policy*" of Mickey Arison, and Carnival, to falsify Safety Records on the Carnival Legend, that Carnival uses in Court against the Plaintiffs in their present lawsuit against Carnival in Miami, Case 12-23829-CIV-COHN-SELTZER, denies the *Pro Se Plaintiffs* their Constitutional Rights to "*Meaningful Access to the Miami District Court*", and "*Due Process of Law*".

*(F) Plaintiffs, and at least 165,672 Passengers on the Carnival Legend, Were Intentionally Endangered, and/or Harmed, by Carnival*

86. The May 8, 2011 CDC Vessel Sanitation Inspection on the Carnival Legend also discovered that the Potable Water Tanks, #3 Port, and #3 Starboard, were both rusty, and in need of repair, so Carnival applied a Two-Part Epoxy-Coating System (paint) to the Potable Water Tanks on Saturday March 19, 2011, while the Carnival Legend was loaded with passengers, and at sea on a cruise.

87. The CDC noted on their Inspection Records that there was no Required Documentation that the application of the Two-Part Epoxy-Coating System (paint) was applied in accordance with the specifications of the manufacturer, and that the manufacturer's recommendations for drying, and curing, were followed.

88. One of the Plaintiffs, Billy Kidwell, is highly trained in in Two-Part Epoxy-Coating System (paint), and therefore knows that the Two-Part Epoxy-Coating System was not properly applied, or cured, endangering the passengers, and crew, on the Carnival Legend, and endangering future Carnival Legend Passengers, and Crew, including endangering the Plaintiffs on their cruise in October of 2011.

89. The Two-Part Marine Epoxy-Coating System is similar to working with Auto Repair Putty.

90. First the Carnival Legend should have been taken out of service for a couple of days to completely empty, and dry the two (2) rusty potable water tanks on the Carnival Legend.

-24-

91. Then the rusty Potable Water Tanks had to be sanded, and cleaned, until all the rust, and all the loose prior Epoxy Paint, and/or chipped paint, and damaged areas, were dry, clean, and free of all rust, and dirt, and that all defects in the water tanks repaired.

92. Once the Potable Water Tanks were emptied, properly dried, cleaned, sanded, repaired, and ready for painting, the Two-Part Marine Epoxy-Coating Technician needed to take the temperature of the area around the tank, because the Epoxy Two-Part Paint will remain gooey, and does not get hard, until the second part, a hardener, is properly applied, according to the manufacturer's instructions, which is based, in part, on the temperature where the Epoxy is mixed, and applied.

93. The freshly applied Epoxy needs lots of air flow to properly dry, and must be cured, according to the manufacturer's instructions, **before the potable water tanks are again safe for use.**

94. CDC, and Carnival Cruise Records, prove that the above proper procedure for applying the Two-Part Epoxy System was not followed, that the rusty Potable Water Tanks were painted, while they were being used, and that the Carnival Legend was never taken out of service for the Potable Water Tank Maintenance, endangering users of those Potable Water Tanks, including the Plaintiffs.

95. The Micky Arison, and Carnival Cruise Line, policy of cutting corners, and not taking the Carnival Legend out of service to repair its rusty Potable Water Tanks resulted in

endangering everyone using the potable water, and could very
easily contaminate the entire Potable Water System.

96. The very next CDC Vessel Sanitation Inspection on the
Carnival Legend, on October 9, 2011, a mere two weeks before the
Plaintiffs cruise, discovered that the Potable Water tested
**POSITIVE** for Coliforms, which indicates that the Potable Water
is contaminated.

97. The CDC VSP 2011 Operations Manual at page 50-Potable Water,
at section 5.6 *"Microbiologic Monitoring"* requires that a
MINIMUM of four (4) Potable Water Samples per month be collected
from the forward, aft, upper, and lower decks of the vessel.

98. The CDC VSP 2011 Operations Manual at page 50-Potable Water,
at section 5.6.1.2 *"Records"* requires that records of the sample
results be maintained on the vessel for at least twelve (12)
months.

99. Defendant's Micky Arison, and Carnival Cruise Lines, refuse
to abide by the CDC VSP 2011 Operations Manual.

100. The CDC Vessel Sanitation Inspection on the Carnival Legend
on October 9, 2011 found that there were NO RECORDS of the
required four (4) Potable Water Samples per month, and no
indication that any E-Coli Tests have ever been taken on the
Carnival Legend.

101. The CDC Vessel Sanitation Inspection on the Carnival Legend
on October 9, 2011 found that Carnival did not keep E-Coli Test
Result Records for at least a year, as required by the CDC VSP
2011 Operations Manual.

102. CDC rules, as well as the World Health Organization, and every Health Department in America, require that when Potable Water tests Positive for Coliforms there <u>MUST</u> be further, well-documented, tests <u>specifically for E-Coli</u>, and without such tests, and/or well-documentation, <u>and proof the water does not have E-Coli present</u>, it is **REQUIRED** that those subject to using said water be **WARNED with a "*Boil Alert*"**, and it is **REQUIRED** that the water be boiled, <u>at least a minute</u>, before any human use.

103. Defendants Micky Arison, Carnival Cruise Lines, and the Center for Disease Control had a duty to issue a boil Alert, and to warn the passengers on the Carnival Legend, *including Plaintiffs*, that the Potable Water was not safe, and needed to be boiled before human use, until there was a proper follow-up test for E-Coli, and until Carnival Cruise Lines started keeping records of Potable Water, and E-Coli Test for at least a year, as required by the CDC Rules.

104. With the Potable Water Tanks not being properly repaired, and with the Two Part Epoxy System not being properly applied, and with the Potable Water then testing positive for Coliforms, and with their not being a proper record of a follow-up E-Coli Test, Micky Arison had a **DUTY** to take the Carnival Legend out of service, and to make sure Carnival Passengers, *including Plaintiffs*, were not exposed to, and did not use, the Potable Water on the Carnival Legend.

105. Instead Defendants Micky Arison, and Carnival Cruise Lines, represented to the Carnival Legend Passengers, *including Plaintiffs*, that the Potable Water was safe, encouraging Passengers to drink, bathe, and wash with the Unsafe Potable

Water, intentionally poisoning Carnival Legend Passengers, *including Plaintiffs*, with the Unsafe Potable Water.

106. With the Potable Water Tanks not being properly repaired, and with the Two Part Epoxy System not being properly applied, and with the Potable Water then testing positive for Coliforms, and with their not being a proper record of a follow-up E-Coli Test, the CDC had a DUTY to protect the public, *including Plaintiffs*, by issuing a **DO NOT SAIL ORDER**, until the Carnival Legend's Potable Water System was safe, and in compliance with CDC Rules.

107. The CDC, being "*wrongly influenced*" by Carnival Cruise Lines refused to do their clear DUTY intentionally endangering Plaintiffs, and everyone on the Carnival Legend.

108. From Saturday March 19, 2011, when it was discovered that the rusty, Potable Water Tanks on the Carnival Legend had not been properly treated with the Epoxy Two-Part System, and that the Potable Water on the Carnival Legend was not safe, until the CDC Inspection on June 17, 2012, which was the first CDC Inspection since the wrongful application of the Two-Part Epoxy System on the Carnival Legend in which the Potable Water on the Carnival Legend was found to be safe, a total of 69 cruises, and as many as 146,556 Carnival Legend Passengers, *including Plaintiffs*, were knowingly, and intentionally, exposed to the Unsafe Potable Water on the Carnival Legend, and not warned by Carnival, or the CDC, that the Potable Water on the Carnival Legend was not safe.

109. The CEO of Carnival Cruise Lines, Micky Arison, and/or Carnival Cruise Lines, motivated by Unreasonable Financial Gain,

had a specific intent to harm passengers on the Carnival Legend from March 19, 2011 to June 17, 2012, *including the Plaintiffs*, and did substantially harm Plaintiffs, by allowing passengers to sail on the Carnival Legend, while knowing the Potable Water System was not safe, which removes any cap on Punitive Damages pursuant to Florida Law.

110. The CEO of Carnival Cruise Lines, Micky Arison, knowingly condoned, ratified, and consented in violating the CDC Rules, including the CDC VSP 2011 Operations Manual, violating World Health Organization[3] Standards on Potable Water, and violating the Potable Water Safety Standard of every Health Department in America, by refusing to warn passengers on the Carnival Legend from March 19, 2011 to June 17, 2012, *including the Plaintiffs*, that the Potable Water System on the Carnival Legend was not safe.

111. From Saturday March 19, 2011, when it was discovered that the rusty, Potable Water Tanks on the Carnival Legend had not been properly treated with the Epoxy Two-Part System, and that the Potable Water on the Carnival Legend was not safe, until the CDC Inspection on June 17, 2012, which was the first CDC Inspection since the wrongful application of the Two-Part Epoxy System on the Carnival Legend in which the Potable Water on the Carnival Legend was found to be safe, a total of 69 cruises, and as many as 146,556 Carnival Legend Passengers, *including Plaintiffs*, were knowingly exposed to the Unsafe Potable Water on the Carnival Legend, and not warned by Carnival, or the CDC, that the Potable Water on the Carnival Legend was not safe.

---

[3] The World Health Organization is hereinafter referred to as simply "WHO".

112. The CEO of Carnival Cruise Lines, Micky Arison, and/or
Carnival Cruise Lines, motivated by Unreasonable Financial Gain,
had a specific intent to harm passengers on the Carnival Legend
from October 9, 2011 to November 11, 2012, *including the
Plaintiffs*, and did substantially harm Plaintiffs, by knowing
that the Potable Water on the Carnival Legend tested Positive
for Coliforms, and did not have any record of a follow-up test
for E-coli, and by refusing to warn the passengers, refusing to
issue a Boil Alert as required by the CDC, WHO, and every health
department in America, while actually encouraging passengers,
*including Plaintiffs*, to freely use the dangerous Potable Water
on the Carnival Legend.

113. The CDC Vessel Sanitation Program Inspection on October 9,
2011 found that the Recreational Water Facilities on the
Carnival Legend did not have Chart Recorders, Electronic DATA
Recorders, proper pH Testing, or documentation, rendering the
Carnival Legend's Recreational Water Facilities Unsafe for
Humans, posing a very serious Imminent Health Risk for
passengers using the Recreational Water Facilities on the
Carnival Legend, so the CDC recommended that the Recreational
Water Facilities on the Carnival Legend be **IMMEDIATELY** Closed.

114. A CDC Vessel Sanitation Program Inspection Eight (8) Months
Later on June 17, 2012 found that the Chart Recorders, and
Electronic DATA Recorders still had not been installed on the
Carnival Legend Recreational Water Facilities, and despite the
CDC Recommendation on October 9, 2011 that all Recreational
Water Facilities be Immediately Closed, Defendants Micky Arison,
and Carnival Cruise Lines refused to abide by the CDC
Recommendation, and kept the Recreational Water Facilities on
the Carnival Legend Open, intentionally endangering passengers

on 37 Carnival Legend Cruises, and as many as 78,588 passengers, *including the Pro Se Plaintiffs*.

115. The many Imminent Health Risks on the Carnival Legend, as described above, the rusty Potable Water Tanks, the improper application of the two part Epoxy System, the finding of Coliforms in the Potable Water, the failure of Carnival to have records of Follow-Up E-Coli Tests, the lack of Chart Recorders, and Electronic DATA Recorders for the Recreational Water Facilities on the Carnival Legend, the failure of Defendants Micky Arison, and Carnival Cruise Lines to abide by the CDC Recommendation that the Recreational Water Facilities be Immediately Closed, all constituted such dangerous conditions, due to the massive number of Imminent Health Risks, that the CDC was REQUIRED to issue **DO NOT SAIL ORDERS** for the Carnival Legend, and while knowing that there was a very high probability of substantially endangering America's Ports, with such a filthy, disease-laden ship, and a very high probability of harming thousands of passengers, *including Plaintiffs*, Unknown Officials in the CDC violated their OWN Rules, and did not issue **DO Not SAIL ORDERS**, for the many Imminent Health Risks.

116. The four (4) named Plaintiffs, and the Kidwell Plaintiff's daughter, Hannah Kidwell, not being aware of any of the many Imminent Health Risks described above, and being intentionally deceived by Defendants Micky Arison, Carnival Cruise Lines, and the CDC into believing that the Carnival Legend had been inspected, and was safe, with No Imminent Health Risks, and with safe Potable Water, and Safe Recreational Water Facilities, took a cruise on the Carnival Legend from October 23, 2011 to October 30, 2011.

117. On the Carnival Legend Cruise, *described in paragraph 116 above*, all four (4) named Plaintiffs in this case, and the Kidwell Plaintiff's daughter, Hannah Kidwell, *who went on the cruise with them*, drank the <u>Unsafe</u> Potable Water on the Carnival Legend, showered in the <u>Unsafe</u> Potable Water, and washed their hands with the <u>Unsafe</u> Potable Water, *numerous times each day*, not knowing the potable water had recently tested Positive for Coliforms, and was unsafe, and needed to be boiled before human use.

118. On the Carnival Legend Cruise, *described in paragraph 116 above*, all four (4) named Plaintiffs in this case, and the Kidwell Plaintiff's daughter, Hannah Kidwell, ate food on the ship prepared with the Carnival Legend's Dangerous Potable Water, and ate off dishes washed in the Carnival Legend's Dangerous Potable Water.

119. On the Carnival Legend Cruise, *described in paragraph 116 above*, all four (4) named Plaintiffs in this case, and the Kidwell Plaintiff's daughter, Hannah Kidwell, frequently, and repeatedly, used the <u>Unsafe</u> Recreational Water Facilities on the Carnival Legend, *on a daily basis*, not knowing that those Recreational Water Facilities were not safe, and being intentionally deceived by Defendants Micky Arison, Carnival Cruise Lines, and the CDC, and not told that the Recreational Water Facilities did not have the required Chart Recorders, Electronic DATA Recorders, proper pH Testing, *or documentation*, and was so dangerous for humans that the CDC had recommended that the Recreational Water Facilities be Immediately Closed.

120. All four (4) named Plaintiffs in this case, and the Kidwell Plaintiff's daughter, Hannah Kidwell, would not have taken the

Carnival Cruise from October 23, 2011 to October 30, 2011 if
they had been honestly told that the Potable Water System on the
Carnival Legend was not properly maintained, that the two-part
Epoxy System was not properly applied, and/or that the Potable
Water had tested Positive for Coliforms, and needed to be boiled
to be safe for humans, *a mere two weeks before their cruise*.

121. All four (4) named Plaintiffs in this case, and the Kidwell
Plaintiff's daughter, Hannah Kidwell, would not have taken the
Carnival Cruise from October 23, 2011 to October 30, 2011 if
they had been honestly told that the Recreational Water
Facilities on the Carnival Legend did not have the required
Chart Recorders, did not have the required Electronic DATA
Recorders, and did not have proper pH Testing, *or documentation*,
and was so dangerous for humans that the CDC had recommended
that the Recreational Water Facilities be Immediately Closed.

122. As a result of this intentional dishonesty, and specific
intent to harm passengers on the Carnival Legend, by Defendants
Micky Arison, Carnival Cruise Lines, and the CDC, subjecting
them to such a massive number of Imminent Health Risks, all four
(4) named Plaintiffs in this case, and the Kidwell Plaintiff's
daughter, Hannah Kidwell, were substantially harmed, and became
deathly ill with fever, stomach queasiness, stomach cramps,
violent vomiting, and frequent diarrhea.

123. Plaintiff Tom Hubbert is elderly, and had recently suffered
from very aggressive Stage 3 Prostate Cancer, at a nine (9) on
the scale, and actually was recovering, and doing great,
*according to his doctors*, until he was intentionally harmed by
Micky Arison, Carnival Cruise Lines, and Unknown CDC Officials,
that <u>SECRETLY</u> intentionally subjected Tom Hubbert to dangerous

Potable Water, extremely dangerous Recreational Water
Facilities, and to a massive amount of other Imminent Health
Threats, *as described in this Complaint*, that were present on
the Carnival Legend on the October 23, 2011 to October 30, 2011
Cruise.

124. Plaintiff Tom Hubbert became deathly ill with fever,
stomach queasiness, stomach cramps, violent vomiting, frequent
diarrhea, and very substantial rectum bleeding.

125. When Plaintiff Tom Hubbert sought medical care on the
Carnival Legend, and described to Carnival Employees that he had
a fever, stomach queasiness, stomach cramps, violent vomiting,
frequent diarrhea, and very substantial rectum bleeding, which
REQUIRED that his illness be reported to the CDC as a possible
Gastrointestinal Illness, to avoid abiding by CDC Rules,
***pursuant to the policy of dishonesty set by Micky Arison***,
Carnival Legend Officials informed Plaintiff Tom Hubbert that a
fever, stomach queasiness, stomach cramps, violent vomiting,
frequent diarrhea, and very substantial rectum bleeding, were
all symptoms of Sea Sickness.

126. Carnival Employee(s) intentionally misdiagnosed Tom
Hubbert, to further conceal that the Potable Water, and
Recreational Water, on the Carnival Legend were not safe, and
posed Imminent Health Risks on the Carnival Legend, *and to
further profiteer off a passenger Carnival had intentionally
made sick*, Carnival sold Plaintiff Tom Hubbert seasick pills.

127. The illness intentionally inflicted on Tom Hubbert by Micky
Arison, Carnival Cruise Lines, and "*Unknown*" CDC Officials

substantially aggravated Tom Hubbert's Disabilities, and his cancer, causing irreparable harm to this Plaintiff.

128. Plaintiff Linda Hubbert is elderly, and had recently suffered from life threatening Heart Problems, and was recovering, and doing great, *according to her doctors*, until she was intentionally harmed by Micky Arison, Carnival Cruise Lines, and Unknown CDC Officials, that SECRETLY intentionally subjected Linda Hubbert to dangerous Potable Water, to extremely dangerous Recreational Water Facilities, and to a massive amount of other Imminent Health Threats on the Carnival Legend, *as described in this Complaint*, that were present on the Carnival Legend on the October 23, 2011 to October 30, 2011 Cruise.

129. Plaintiff Linda Hubbert suffered a fever, stomach queasiness, stomach cramps, violent vomiting, frequent diarrhea, and sporadic heart pains from the horrible illness Micky Arison, Carnival Cruise Lines, and Unknown CDC Officials had intentionally inflicted on her.

130. The illness intentionally inflicted on Linda Hubbert by Micky Arison, Carnival Cruise Lines, and "*Unknown*" CDC Officials substantially aggravated Linda Hubbert's Disabilities, and her bad heart, causing irreparable harm to this Plaintiff.

131. Plaintiff Billy Kidwell is an elderly, 100% Service-Connected Disabled United States Army Combat Veteran, with a Life-Threatening Stress Disorder, P.T.S.D., from excessive combat, that cases long periods of being unable to sleep, and is documented to have caused Kidwell to have suffered at least two Life-Threatening, Stress-Caused Heart Attacks, resulting in Kidwell's heart to be damaged, and to only operate at 34%.

132. Plaintiff Billy Kidwell also has a stomach disorder from his nerve, and stress disorder, and one side numb, due to a severe back injury during combat in Vietnam, and when receiving an MRI for his back it was discovered that Kidwell had obtained a bubble on his main heart artery, *called an Aortic Aneurysm*, that is life-threatening, and can cause Kidwell to bleed to death, *should it burst*, according to Kidwell's VA Doctors.

133. Prior to the Carnival Legend Cruise, from October 23, 2011 to October 30, 2011, Plaintiff, Billy Kidwell, was able to walk, despite having one side numb, and would daily, *except when it rained*, walk for thirty (30) minutes each day, greeting his neighbors in Port Charlotte Florida, where this Plaintiff lives.

134. After being SECRETLY exposed to the dangerous Potable Water, and to the dangerous Recreational Water Facilities, on the Carnival Legend by Defendants, Plaintiff, Billy Kidwell, became deathly ill with a fever, stomach queasiness, stomach cramps, violent vomiting, and frequent diarrhea.

135. The illness described in paragraph 134 above was so horrible, and the vomiting so violent, that Kidwell's stomach, started bleeding, with his vomit, and after the first day of violent vomiting Kidwell started suffering sporadic heart pains, lightheadedness, dizziness, and shortness of breath, from the horrible illness Micky Arison, Carnival Cruise Lines, and Unknown CDC Officials had intentionally inflicted on him.

136. Plaintiff, Billy Kidwell, was actually so queasy, lightheaded, and unsure on his feet, from the most horrendous vomiting he had suffered in his 65 years, that he fell in the dining room onto another Cruise Passenger's Family, knocking

dishes off their table, when going to eat supper on the Carnival Legend.

137. Plaintiff Billy Kidwell sought medical care and was informed at the desk on the Carnival Legend that a fever, stomach queasiness, stomach cramps, violent vomiting, and frequent diarrhea were *"merely a severe case of Sea Sickness"*, and told that *"a large number of Carnival Legend Passengers on the cruise were also sick, with severe sea sickness, because the Carnival Legend Cruise of October 23, 2011 to October 30, 2011 was going through a hurricane."*

138. The illness intentionally inflicted on Billy Kidwell by Micky Arison, Carnival Cruise Lines, and *"Unknown"* CDC Officials substantially aggravated Billy Kidwell's Disabilities, his Life-Threatening Stress Disorder, his Bad Heart, and his Stomach, and other disabilities, causing irreparable harm to this Plaintiff.

140. After being SECRETLY exposed to the dangerous Potable Water on the Carnival Legend, and to the dangerous Recreational Water Facilities by Defendants, Plaintiff, Billy Kidwell's Wife, Tana Kidwell, also became deathly ill with a fever, stomach queasiness, stomach cramps, violent vomiting, and frequent diarrhea.

141. Plaintiff Tana Kidwell sought medical care and was informed at the desk on the Carnival Legend that a fever, stomach queasiness, stomach cramps, violent vomiting, and frequent diarrhea were *"merely a severe case of Sea Sickness"*, and told that *"a large number of Carnival Legend Passengers on the cruise were also sick, with severe sea sickness, because the Carnival*

*Legend Cruise of October 23, 2011 to October 30, 2011 was going through a hurricane."*

142. The Kidwell Plaintiff's Daughter, Hannah Kidwell, was also SECRETLY exposed to the dangerous Potable Water on the Carnival Legend, and to the dangerous Recreational Water Facilities, and became deathly ill with a fever, stomach queasiness, stomach cramps, violent vomiting, and frequent diarrhea.

143. When Hannah Kidwell sought medical care she was also informed at the Service Desk on the Carnival Legend that a fever, stomach queasiness, stomach cramps, violent vomiting, and frequent diarrhea were *"merely a severe case of Sea Sickness"*, and Carnival Employees said that *"a large number of Carnival Legend Passengers on the cruise were also sick, with severe sea sickness, because the Carnival Legend Cruise of October 23, 2011 to October 30, 2011 was going through a hurricane."*

144. None of the Four (4) Plaintiff(s) Illnesses were reported to the CDC, as **REQUIRED** by law.

145. There were signs of other passengers being sick everywhere on the Carnival Legend, from vomit in the restroom on the main floor that Plaintiffs passed to go eat to vomit in the hall going to their room, and on the main deck.

146. Rooms on the Carnival Legend had an old musty smell, like an old motel in the trashy part of a town, and the food areas had signs of long term filth, giving the impression the Carnival Legend was old, and had not been cared for, or thoroughly cleaned.

147. Food on the Carnival Legend ranged from good to unfit for humans to eat, with some meats being "*tainted*", and nearly rotting.

148. For Room service Carnival would bring uncooked cheese on old bread, fraudulently claiming it was a "*grilled*" cheese sandwich, with damp, soft, potato chips on the side that actually had mold on them, that Plaintiffs threw away, since they were unfit to eat.

149. Carnival lied to sick passengers, falsified records, and did not report the many cases of Gastrointestinal Illness, Norovirus, and/or E-Coli, on the Carnival Legend Cruise the Plaintiffs were on, continuing their Policy of Obstruction, and **Official Record Falsification**.

150. Defendant Micky Arison, and Carnival Cruise Lines, knowingly, and intentionally, SECRETLY subjected at least 165,672 Passengers, on 78 Carnival Legend Cruises, from May 8, 2011 to November 11, 2012 to a massive number of Imminent Health Risks, caused by the Dangerous Potable Water, *that tested Positive for Coliforms*, **and had no follow-up E-Coli Test**, caused by a defective Recreational Water System, *without Chart Records, and Data Loggers*, and due to Carnival's Policy of Falsifying Safety Records, and numerous other Health, and Safety Violations.

### *(G) 165,672 Carnival Passenger-Victims Denied BASIC HUMAN RIGHTS*

151. Defendant's Micky Arison, Carnival Cruise Lines, and "*Unknown*" CDC Officials are violating the **Basic Human Rights** of

those 165,672 Passenger-Victims, *including Plaintiffs*, by concealing from them all the Imminent Health Risks that they were intentionally exposed to on the Carnival Legend.

152. It is well-settled in International Law, and Treaties on Human Rights, that individuals intentionally poisoned with Unsafe Potable Water, Unsafe Recreational Water Facilities, and **possibly E-Coli Infected Water**, as Defendants Micky Arison, and Carnival Cruise Lines intentionally did to the *Pro Se Plaintiffs*, **and to 165,672 other victims to "Maximize" Profits**, creates a **BASIC HUMAN RIGHT** for the victims to, *in the very least*, be informed of all the Specific Health Hazards, that they were intentionally exposed to.


## (H) Defendants Micky Arison, and Carnival Cruise Line's, False Advertising, Intentional Fraud, and Fake Vacation Guarantee

153. Carnival advertised on their internet website that Carnival had the best Vacation Cruise Guarantee in the business, that if Plaintiffs, *prior to the first port*, went to the service desk and said they wanted to invoke the Guarantee that they would receive a refund, and be flown back to Tampa.

154. Plaintiffs fully complied with Carnival's Vacation Cruise Guarantee, and when the Plaintiffs went to the information desk on the Carnival Legend it was unmanned, and there were a number of other passengers standing around wanting to complain about the cruise, *prior to the first port of call*, to state they hated the cruise, and wanted to invoke the warranty, and the Defendant, Carnival Cruise Lines, refused to have the information desk open as required by Carnival's Vacation

Guarantee, and refused to honor Carnival's published, and highly advertised, Vacation Guarantee.

155. Carnival then falsified their records, ***continuing their ongoing Policy of Falsifying Official Records***, falsely claiming that "*There was no record of anyone applying for the Vacation Guarantee*", despite the Carnival Legend going through a hurricane, and everyone being sick with E-Coli from the contaminated Potable, and Recreational Water.

156. The conduct by Micky Arison, and Carnival Cruise Lines, as described in the four (4) paragraphs above, proves that the advertising by those Defendants, as to their Vacation Guarantee, is Fraudulent, and that despite the Defendant's advertising, there is no Carnival Vacation Guarantee, or at least Carnival does not honor, or abide by their highly advertised Vacation Guarantee.

## (I) Plaintiff(s) Could've Died

157. Upon returning home, from the Carnival Legend Cruise, Plaintiff Tom Hubbert required substantial medical care for the severe illness he had obtained on the Carnival Legend.

158. The illness Defendants, Micky Arison, and Carnival Cruise Lines, intentionally inflicted on Tom Hubbert aggravated his cancer, and could have caused his death.

159. Plaintiff, Linda Hubbert, almost died and was rushed to the hospital where it was discovered she had obtained E-Coli on the Carnival Legend.

160. Plaintiff, Billy Kidwell, a 100% Service-Connected Disabled Combat Veteran, returned home deathly-ill from the Carnival Legend Cruise, and immediately sought medical care for the E-Coli he obtained on the Carnival Legend, from the Department of Veterans Affairs, however it can take over six months to see a VA Doctor, and Kidwell recovered after about ten (10) days of the most violent vomiting, and worst illness he has suffered in his 65 years.

161. With Billy Kidwell's history of Life-Threatening Stress-Caused Heart Attacks, with his heart operating at only 43%, and with his Aortic Aneurysm, the extremely violent vomiting, for over a week, caused by Defendants Micky Arison, and Carnival Cruise Lines, in their moral-less quest for massive, dishonest profits, Plaintiff Billy Kidwell could have easily died.

162. Plaintiff, Tana Kidwell, returned home so sick she was bedbound, so she contacted the Department of Veterans Affairs for Dependent Medical Care, but could not locate a Champ VA Doctor in the Port Charlotte Area, and was far too ill to get out of bed and go traveling, and looking for a doctor.

163. The Kidwell Plaintiff(s) Daughter returned home deathly-ill and Plaintiffs were able to find a Champ VA Doctor for minor children that accepted Champ VA, and had Hannah Kidwell treated for her severe illness from the Filthy Carnival Cruise.


*(J) A Cover-Up by Micky Arison, Carnival, and the CDC*

164. Several Passengers-Victim's Statements posted at Cruise Critic on the internet describes barf bags posted to the walls

on their cruise, and prove that, *according to other Carnival Legend Passengers*, hundreds of other Carnival Legend Passengers were sick, and their illness was not reported to the CDC by Carnival Cruise Lines, as **REQUIRED** by law.

165. Plaintiff(s) Tom Hubbert, Linda Hubbert, Billy Kidwell, and Tana Kidwell all contacted the Director of the CDC, Doctor Tom Frieden, and made him fully aware that the Plaintiffs, and large numbers of other passengers, had Gastrointestinal Illnesses, and/or E-Coli, on the Carnival Legend, and specifically requested that it be reported on the CDC Website, as **REQUIRED** by law.

166. Director of the CDC, Doctor Tom Frieden, refused and covered-up the Gastrointestinal Outbreak, and/or E-Coli on the Carnival Legend.

167. Micky Arison, the Carnival Corporation, and the CDC, has continued to refuse to abide by CDC Rules and has not reported a single case of the Gastrointestinal Outbreak, and/or E-Coli on the Carnival Legend, despite Plaintiff's doctors confirming that the illness was E-Coli.

168. The refusal by Defendants Micky Arison, Carnival Cruise Lines, and the CDC, to report Gastrointestinal Illnesses on the Carnival Legend, and the falsification of Official Records reporting Carnival Legend Gastrointestinal Illnesses by those Defendants, denies the *Pro Se Plaintiffs* "*Meaningful*" Access to the Courts, and Due Process.

*(K) Intentional F.O.I.A. Violations by CDC to OBSTRUCT Plaintiffs in Access to Court*

169. On November 17, 2011 the *Pro Se Plaintiffs* sent a Freedom of Information Act Request to Doctor Tom Frieden, Director of the CDC asking for a copy of the Preliminary Inspection Reports, and related CDC Records in regards to the CDC Vessel Sanitation Program Inspections of the Carnival Legend, a copy of all CDC Records related to the Carnival Legend, and a list of related, specific CDC Vessel Sanitation Program Records.

170. Doctor Tom Frieden, Director of the CDC, was told that the F.O.I.A. records were extremely important to Plaintiffs, because a large number of passengers had gotten sick on the Carnival Legend on Plaintiff's Cruise, and Plaintiffs needed the F.O.I.A. Records to find out why they got sick, and that Plaintiffs also needed those requested records to have *"Meaningful"* Access to government agencies, and to the Courts, in regards to their Carnival Cruise on the Carnival Legend.

171. Doctor Tom Frieden, Director of the CDC, refused to respond.

172. On March 8, 2012 Plaintiffs sent two more letters to Doctor Tom Frieden, Director of the CDC, one repeating their F.O.I.A. Request, and the CDC refused to respond.

173. On March 27, 2012 Plaintiffs sent three e-mails to Doctor Tom Frieden, Director of the CDC containing the same Formal F.O.I.A. Requests and the CDC still refused to respond.

174. On April 3, 2012 Plaintiffs sent a letter, and an E-Mail, to both Doctor Tom Frieden, Director of the CDC, and to the Legal Department for the CDC, containing the same F.O.I.A. Request, and the CDC still refused to provide the requested records.

175. On October 5, 2012 Plaintiffs sent both e-mails, and two letters to Doctor Tom Frieden, Director of the CDC, and to the Legal Department for the CDC, repeating their F.O.I.A. requests and still did not get the requested records.

176. On November 18, 2012 Plaintiffs sent yet another letter to Doctor Tom Frieden, Director of the CDC, and to the Legal Department for the CDC, demanding the F.O.I.A. Documents they requested, and giving Notice of Intent to File Suit for same.

177. Doctor Tom Frieden, Director of the CDC, and "*Unknown*" CDC Officials, intentionally violated Plaintiff's F.O.I.A. Rights, and intentionally **OBSTRUCTED** Plaintiff's Constitutional Right(s) of "*Meaningful*" Access to the Courts by concealing **PUBLIC** CDC Records for the Carnival Legend.

178. Doctor Tom Frieden, Director of the CDC, and "*Unknown*" CDC Officials, were motivated by their overly close relationship with Carnival, and the CDC's *ongoing* "*Policy*" of allowing their "*Friends*" at the Carnival Corporation **to defraud the American Public out of Hundreds of Millions of Dollars**, dumping passengers, Carnival intentionally makes ill, at America's Ports where they are cared for with government programs such as, Medicare, Medicaid, and the Department of Veterans Affairs.

179. Doctor Tom Frieden, Director of the CDC, and "*Unknown*" CDC Officials, motivated by their overly close relationship with Carnival, refuse to do their duty and enforce the Public Health Service Act, 42 U.S.C. § 264, with Carnival Cruise Lines is in clear violation thereof.


## (L) The Intentional Civil Rights Violations by Defendants

180. *As described above*, the *Pro Se Plaintiffs*, had a very strong lawsuit against Carnival Cruise Lines, and not knowing at the time, that the Miami U.S. District Court had been highly bribed by Defendants Micky Arison, and the Carnival Corporation, or that they were going against a **Mafia-Like Rico Crime Family**, that controlled the Miami Area, Plaintiffs filed suit in the U.S. District Court in Miami, Case 12-23829-CIV-COHN-SELTZER.

181. On October 24, 2012 the *Pro Se Plaintiffs* served a "*Notice of a Lawsuit and Request to Waive Service of a Summons*" on the Defendant in the Miami Lawsuit, the Carnival Corporation.

182. Defendant(s), Micky Arison, and the Carnival Corporation, realizing the Plaintiffs were elderly, disabled, untrained in the law, and helpless without an Attorney, engaged in a scheme, and a conspiracy, with the Law Firm of Forman Friedman, *and Partner(s), and Attorneys, in the Law Firm of Forman Friedman*, to intentionally violate the Constitutional Rights of the *Pro Se Plaintiffs*, and to Criminally **OBSTRUCT**, and hinder, the Plaintiffs access to the United States District Court in Miami, by engaging in a number of Criminal Acts of Obstruction.

183. This Criminal Obstruction against the *Pro Se Plaintiffs* occurred in Port Charlotte, Florida, where the Kidwell Plaintiffs reside, which is in Charlotte County Florida, in the jurisdiction of this Court.

184. The Defendants, Micky Arison, Carnival Cruise Lines, and the Law Firm of Foreman Friedman, knew that <u>despite having the Miami District Court highly bribed, and in their pocket to OBSTRUCT *Pro Se Litigants*</u>, that the *Pro Se Plaintiffs* had a very strong case, a massive amount of evidence, and a very high probability of prevailing, if not in the highly bribed, dishonest Miami Court, the Defendants knew the *Pro Se Plaintiffs* could prevail in the Eleventh Circuit.

185. Defendant(s), Micky Arison, the Carnival Corporation, and the Law Firm of Forman Friedman, came up with a Fake Settlement-Reimbursement Scheme to Obstruct Plaintiffs "*Meaningful*" Access to the Miami U.S. District Court, by defrauding the <u>Unsuspecting</u> and <u>Unrepresented</u> *Pro Se Plaintiffs* out of their evidence.

186. On November 7, 2012 Micky Arison, and the Carnival Corporation, had Catherine J. MacIvor, a Partner in Foreman Friedman, call the Kidwell Plaintiff(s) at their home in Port Charlotte, Florida asking specifically for Plaintiff, Billy Kidwell.

187. Plaintiff, Tana Kidwell, answered the phone, and put the conversation on Kidwell's speaker phone, since Plaintiff, Billy Kidwell was in bed, *in bad pain*, suffering from his severely disabled back, while Tana Kidwell occasionally joined in the conversation, since it was on a speaker phone.

## (M)  The Theft of Plaintiff's Evidence

188. Attorney Catherine MacIvor at first yelled at Billy Kidwell on the phone, saying the judge was going to dismiss Kidwell's lawsuit because of some technically[4], and then Attorney MacIvor started talking nice saying that Carnival wanted to settle the lawsuit, because it would cost Carnival as much to fight the lawsuit, as to settle.

189. Attorney Catherine MacIvor stated that she was authorized to settle on behalf of Carnival Cruise Lines, and that she had no problem "*Reimbursing*" the Plaintiffs for all of their costs, and damages, as she started referring to the Settlement as a "*Reimbursement*".

190. Attorney Catherine MacIvor said she hadn't looked over the file yet, and asked Plaintiff, Billy Kidwell, to describe what happened, and to be sure to tell her all the damages the Plaintiffs suffered so that Carnival could fully reimburse **EACH** of the *Pro Se Plaintiffs*.

191. The Kidwell's Minor Child, Hannah Kidwell, was a Plaintiff on the Miami Lawsuit at the time, and Catherine MacIvor promised that Carnival was going to reimburse all the Plaintiffs, including Kidwell's Minor Child, Hannah Kidwell.

---

[4] Attorney Catherine MacIvor used some legal term as to why she said the judge said he would dismiss the lawsuit however the *Pro Se Plaintiffs* do not remember the legal term she used.

192. The phone call caught *Pro Se Plaintiff*, Billy Kidwell, off guard, since the Defendant had not even agreed to waive service yet, and Plaintiff, Billy Kidwell, is untrained in the law, and wasn't expecting, nor prepared, for a Settlement Offer from Carnival, so during the lengthy conversation Plaintiff, Billy Kidwell, stated the medical bills for the Hubbert Plaintiffs could have been anywhere between twenty-five to thirty thousand dollars.

193. Attorney Catherine MacIvor was now extremely friendly, stating that she was eager to work with the Plaintiffs to resolve this case, and that *"She had no problem paying Thirty-Five Thousand Dollars to each Plaintiff to reimburse them for the sickness they obtained on the Carnival Legend."*

194. Attorney Catherine MacIvor made it clear that she had the authority to made decisions for Carnival Cruise Lines, and that it was a done deal, **and Firmly SETTLED**, that she would pay each Plaintiff Thirty-Five Thousand Dollars.

195. As Plaintiff, Billy Kidwell, and Attorney Catherine MacIvor, continued to talk she then changed her prior agreement stating that while she had *"No Problem paying each Plaintiff Thirty-Five Thousand Dollars"* that she needed all the Medical Evidence the Unrepresented *Pro Se Plaintiffs* had, including all related bills, and records of all damages the Plaintiffs suffered, so she could explain to her employer, Carnival Cruise Lines, and justify the amount of the check she was cutting to Plaintiffs.

196. Attorney Catherine MacIvor was extremely sweet in this conversation, and make statements to the effect that she was

acting on behalf of both Carnival, and as an Attorney for the Plaintiffs, by making statements such as *"Carnival, and the Plaintiffs, both have the same goal of resolving this so I am going to help you"*.

197. Attorney Catherine MacIvor made it extremely clear that she was acting as counsel for both Carnival Cruise Lines, and for the *Pro Se* Unrepresented *Plaintiffs*, during the phone call to the Kidwell home on November 7, 2012, *resolving the case together*, as she gave Plaintiffs Billy Kidwell, and Tana Kidwell, *who was also on the phone*, legal advice, and legal instruction.

198. Plaintiff, Billy Kidwell, stated that as a requirement of the Settlement the Plaintiffs wanted a check cut within ten (10) days, and for the Settlement to be drafted to show that it was not income, but to pay the costs of an illness, to make the Settlement Tax Free.

199. Attorney Catherine MacIvor **AGREED**, and stated that she needed all of the Plaintiff's evidence right away so that she could get a check cut within ten (10) days, which was requested by Plaintiff, Billy Kidwell.

200. Plaintiff, Billy Kidwell, pointed out that while everyone was in agreement as to the Settlement for the medical harm, that the only remaining issue was the violation of the Vacation Guarantee by Carnival, and asked Attorney MacIvor to reimburse the Plaintiffs an additional Five Thousand Dollars each to pay for all costs of the cruise, which with the medical resolved, would **SETTLE** the whole lawsuit.

201. Attorney MacIvor was very sweet, and agreeable, and stated that "*She had no problem paying each Plaintiff another Five Thousand Dollars to completely resolve all of Plaintiffs claims*" however now in addition to all of Plaintiff's evidence, she wanted Plaintiff, Billy Kidwell, to represent all of the *Pro Se Plaintiffs*, and for Plaintiff, Billy Kidwell, to make sure **ALL of the evidence the Plaintiffs had** was quickly sent to Kidwell, and promptly forwarded by Billy Kidwell to Attorney MacIvor.

202. *Last*, Attorney MacIvor wanted Plaintiff, Billy Kidwell, to follow her legal instruction, and to draft a Written Demand for Settlement, and get it off to Attorney MacIvor right away.

203. Attorney Catherine MacIvor stated that Plaintiff, Billy Kidwell, had to rush, doing everything she requested, so that she could get the check cut within ten (10) days as Plaintiff, Billy Kidwell, requested.

204. After the phone call Plaintiff, Billy Kidwell, called his brother Tom Hubbert to tell him about the agreement, and to get all the evidence.

205. The Hubbert Family was not home so Plaintiff Billy Kidwell immediately rushed a letter off to them by next day mail.

206. Later in the day Billy Kidwell was able to contact the Hubberts, and everyone was excited, and in agreement about the Settlement, and despite being deathly ill, Tom, and Linda Hubbert started rushing off to their doctors, and to the hospital where Linda Hubbert was treated for E-Coli, to get all their medical records, and to rush the evidence to Billy Kidwell

so he could forward it to Attorney MacIvor, so they could receive their check within ten days.

207. Plaintiff firmly believed that the lawsuit was Completely Settled due to Attorney MacIvor specifically stating that "*She would try her best to have a reimbursement check in Plaintiffs hands within ten (10) days*".

208. The very same day Plaintiff, Billy Kidwell, drafted the Settlement Demand, as agreed, but in his rush reduced the amount sought for Medical Damages to Twenty-Five Thousand Dollars, without realizing it, due to confusion, being sick, unprepared for a settlement, and eager to fully comply, to get the check within ten days, as promised by Attorney MacIvor.

209. Since the reduced amount was Plaintiff's error the Plaintiffs would have accepted the reduced amount as being the agreed Settlement.

210. Plaintiffs fully complied with all terms of the Settlement and promptly sent all of their evidence to Attorney Catherine MacIvor, as agreed.


## (N) Plaintiffs Discover Settlement was a Fake Con Game to Steal Plaintiff's Evidence

211. After receiving all of Plaintiffs evidence Attorney Catherine MacIver suddenly changed her attitude, and was no longer extremely friendly, as she started making excuses for being unable to comply with the ten day deadline to cut a check, as she started using terms, and language, implying there was no

settlement, and that she had to present the settlement demand to
Carnival.

212. The *Pro Se Plaintiffs* had ran around sick, endangering
their health, rushing to get all of their evidence off to
Attorney MacIvor right away because of her promise to cut a
check within ten days, and now she was stalling, and clearly
backpedaling on her promises.

213. From November 7, 2012 to November 23, 2012 Attorney
Catherine MacIvor kept stalling, saying she was sick, and
wording her e-mails to imply that she now merely wanted to
present a Settlement Offer to Carnival, despite her prior Firm
Promise to have a check in Plaintiff's hands within ten days.

214. Realizing that they had been swindled out of their
evidence, *prior to the Defendant even accepting service of the
Complaint*, effectively denying Plaintiffs all "*Meaningful*"
Access to the Court, since Plaintiffs could not prosecute the
case without their evidence, Plaintiffs started complaining to
the Miami District Court, still not knowing that the Miami Court
was highly bribed by Carnival, in direct violation of Caperton.

## (O) Judge James I. Cohn, and Magistrate Barry S. Seltzer, Act without Subject Matter Jurisdiction

215. Judge James I. Cohn, and Magistrate Barry S. Seltzer, are
highly trained in the law, and fully aware of Caperton v. A.T.
Massey Coal Co., Inc., 556 U.S. (2009) clearly stating that
having a party in a case spend Three Million Dollars to
"*influence*" a Court in a state, denies the other party in the

case Due Process, and renders the proceedings in that case Unconstitutional, and not valid.

216. Judge James I. Cohn, and Magistrate Barry S. Seltzer, are fully aware that Defendants, Micky Arison, and Carnival Cruise Lines, has spent at least ten times the amount Massey Coal spent in Caperton to "*enhance*" the lives of everyone in Miami, including the judges, and Magistrates, on the Miami U.S. District Court.

217. Judge James I. Cohn, and Magistrate Barry S. Seltzer, are fully aware that Defendants, Micky Arison, and Carnival Cruise Lines, which is a **PANAMA** Corporation, have no motive for spending all that money to "*Enhance*" lives in the Miami Area, other than to wrongly influence this Court, where all Carnival Victims are forced to sue.

218. Judge James I. Cohn, and Magistrate Barry S. Seltzer, are fully aware that the doctrine set by the United States Supreme Court in Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. (2009) takes away their Subject Matter Jurisdiction to hear cases in which Carnival Cruise Lines is a party, due to the massive bribing of the Miami U.S. District Court by the Defendant, Carnival Cruise Lines, resulting in it being a Due Process Violation, and Unconstitutional for the Miami Court to have jurisdiction over the **PANAMA** Corporation that **OWN** the Miami District Court.

219. Judge James I. Cohn, and Magistrate Barry S. Seltzer, are fully aware that Plaintiffs have filed Tort Claims against the Miami District Court, and that because of the Tort Claims Judge James I. Cohn, and Magistrate Barry S. Seltzer, are opposing

parties against Plaintiffs, and have a very strong personal interest in the outcome of Plaintiff's Miami Lawsuit against Carnival, violating the well-settled doctrine that a judge cannot judge himself.

220. Judge James I. Cohn, and Magistrate Barry S. Seltzer, do not have the authority, and/or, jurisdiction, to overthrow well-settled Eleventh Circuit Law allowing *Pro Se Litigants* to attend the Case Scheduling Conference by phone.

221. Judge James I. Cohn, and Magistrate Barry S. Seltzer, do not have the authority, and/or, jurisdiction, to require, or **ORDER**, *Pro Se Litigants* to attempt suicide, as a requirement for access to the Miami District Court, nor does those judges have the authority to **ORDER** Plaintiffs to endanger their lives by violating their doctor's ORDERS, and/or advice.

222. Despite not having jurisdiction, or authority to do so, Judge James I. Cohn, and Magistrate Barry S. Seltzer, while receiving benefits from Carnival Cruise Lines far in excess of what the judge in Caperton received from Massey Coal, refused to transfer the Miami Lawsuit to an Unbiased, Un-bribed, Constitutional Judge, and are acting without Subject Matter Jurisdiction, *or authority*, **intentionally denying Plaintiffs Due Process**, in direct violation of Caperton, fixing the instant case to repay Carnival for the benefits Carnival provides judges on the Miami Court.

## (P) *Intentional Perjury by Catherine MacIvor and Attorney Aleksey Shtivelman*

223. Plaintiffs complained to Judge Cohn, and Magistrate Seltzer, about the Defendant using a Fake Settlement-Reimbursement Con Game to steal Plaintiffs evidence effectively denying the Plaintiffs "*Meaningful*" Access to the Court.

224. In response Attorney Catherine MacIvor, and Attorney Shtivelman, filed Perjured Declarations in which they clearly contradicted themselves, and clearly committed Perjury.

225. Attorney Catherine MacIvor stated in her Declaration that she, and Aleksey Shivelman, contacted Plaintiff Billy Kidwell to obtain telephone and e-mail contact information of the other *Pro Se Plaintiffs*, Tom and Linda Hubbert.

226. The above statement in paragraph 225 by Attorney MacIvor in her Declaration is an Intentionally Perjured Lie.

227. Attorney Catherine MacIvor stated in her Declaration that "*there was never any discussion of settlement during her November 7, 2012 phone call to Plaintiff Kidwell's home*".

228. The above statement in paragraph 227 by Attorney MacIvor in her Declaration is an Intentionally Perjured Lie.

229. Attorney Catherine MacIvor stated in her Declaration that "*Kidwell never mentioned a specific dollar amount during the conversation, no demands were made, and no agreements reached*".

230. The above statement in paragraph 229 by Attorney MacIvor in her Declaration is an Intentionally Perjured Lie.

231. Attorney Catherine MacIvor stated in her Declaration that "*She never provided any legal advice to Mr. Kidwell*".

232. The above statement in paragraph 231 by Attorney MacIvor in her Declaration is an Intentionally Perjured Lie.

233. First the Declaration of Attorney Catherine MacIvor directly contradicts itself, and cannot be true.

234. Catherine MacIvor's Declaration fraudulently claims that she, and Defendant Aleksey Shtivelman, called Plaintiff, Billy Kidwell, on November 7, 2012 to give herself an eye witness to support the lies in her Declaration however both Billy Kidwell, and Tana Kidwell, have submitted Affidavits stating that Aleksey Shtivelman did NOT call them on November 7, 2012, and in Catherine MacIvor's OWN e-mail of November 7, 2012 she **introduces** "*her associate on the file as being Aleksey Shtivelman*".

235. If Aleksey Shtivelman had been a party to the phone call on November 7, 2012 Attorney Catherine MacIvor would have made a statement to the effect of "you may also contact *Aleksey Shtivelman who was on the phone call with us"*, or something to that effect, instead of INTRODUCING him in her E-mail, as being her associate on the file.

236. Attorney Catherine MacIvor stated in her Declaration that she, and Aleksey Shivelman, contacted Plaintiff Billy Kidwell to obtain telephone and e-mail contact information of the other *Pro*

*Se Plaintiffs*, Tom and Linda Hubbert, however <u>ALL</u> of the *Pro Se Plaintiffs* provided contact information in the Civil Complaint.

237. Attorney MacIvor states in her Sworn Declaration that reviewed the file yet, therefore she clearly had no idea if contact information for Tom, and Linda Hubbert was **<u>ALREADY IN THE FILE SHE HAD</u>**, directly contradicting Attorney MacIvor's claim that the purpose of the November 7, 2012 phone call to Plaintiff Billy Kidwell was to get *"contact information for the Hubbert Plaintiffs"*.

238. The personal E-Mail from Attorney Catherine MacIvor to Plaintiff Billy Kidwell, on the same day of the phone call to Kidwell, just a few minutes <u>AFTER</u> the phone call, on Wednesday, November 7, 2012, states that "Per our discussion today you agreed to provide a Written Demand for Settlement and all corresponding documentation of medical and other expenses" making it clear that the main subject of the phone call to Plaintiff Billy Kidwell was Settlement Discussions, and to obtain the Plaintiff's evidence, their *"documentation of medical, and other expenses"*.

239. From the date of the Phone call to Plaintiff, Billy Kidwell, on November 7, 2012 to November 23, 2012 there was a flurry of E-mails between Billy Kidwell, and Catherine MacIvor, and **<u>every single E-Mail was about a Settlement, and/or Reimbursement to Plaintiffs</u>**, proving, beyond any doubt, Attorney MacIvor intentionally committed perjury in her Declaration when she stated the Phone Call to Kidwell on November 7, 2012 was *"to obtain contact info for the Hubbert Plaintiffs"*.

240. In this flurry of E-Mails between Kidwell, and Attorney MacIvor, **NOT ONCE** did Attorney MacIvor ask for a contact number, or E-Mail for the Hubbert Plaintiffs proving Attorney MacIvor intentionally committed Perjury in her Declaration.

241. In this flurry of E-Mails between Kidwell, and Attorney MacIvor, Attorney MacIvor made it clear that she had authorized Plaintiff, Billy Kidwell, to act on behalf of all the *Pro Se Plaintiffs*, proving Attorney MacIvor intentionally committed Perjury in her Declaration.

242. E-mail records between Billy Kidwell, and Attorney MacIvor, **INDISPUTABLY** prove that Attorney MacIvor intentionally committed Perjury in her Sworn Declaration, and that the very first request for the Hubbert Plaintiff's contact occurred on November 26, 2012, at 12:01 PM, when Attorney MacIvor proposed that *"Only Plaintiff Billy Kidwell be served at his e-mail address, and that the Hubbert Plaintiffs sign a statement agreeing to only serving Plaintiff Billy Kidwell."*

243. Despite the massive amount of daily e-mails, and letters, between Kidwell, and Attorney MacIvor, there is no other record, *anywhere*, supporting Attorney MacIvor's claim that the Phone Call to Kidwell was to obtain contact info for the Hubbert Plaintiffs, and Attorney MacIvor's **OWN** E-mails prove she intentionally committed Perjury in her Declaration, and that Attorney MacIvor had not even looked at the file, and therefore had no idea if she already had contact info for the Hubbert(s), and that the actual purpose of her phone call was a **Fake Settlement Scheme** to swindle the Unrepresented *Pro Se Plaintiffs* out of their evidence, and **OBSTRUCT** their access to the Miami U.S. District Court.

244. The flurry of E-Mails between Kidwell, and Attorney MacIvor **INDISPUTABLY** Prove Attorney MacIvor intentionally committed Perjury when she stated there was no discussion of a Settlement during the November 7, 2012 phone call to Plaintiff Kidwell's home.

245. The flurry of E-Mails between Kidwell, and Attorney MacIvor **INDISPUTABLY** Prove Attorney MacIvor intentionally committed Perjury when she stated she did not give Kidwell Legal Advice, and proves that she gave Kidwell Legal Instruction, and told him to represent all the Plaintiffs, to send her Plaintiff's evidence, and for Kidwell to draft, and file a Written Settlement Demand.

246. The Attorney, Judge, and Magistrate Defendants, are fully aware that the Florida Supreme Court has stated that merely giving someone instruction to file a Settlement Demand, <u>exactly as in this case</u>, constitutes the Practice of Law in Florida, therefore both Attorney MacIvor, and Attorney Aleksey Shtivelman, knowingly, and intentionally, committed Perjury in their Sworn Declarations when they stated Kidwell was not given legal advice.

247. Plaintiffs reported this intentional Perjury, and the Thief of their Evidence by Defendants with a Fake Settlement Scheme, and the Criminal **OBSTRUCTION** by Defendants, and both Judge Cohn, and Magistrate Seltzer, engaged in **Misprision of those Felonies**, covering up the Federal Felony Crimes of Carnival's Attorneys to re-pay Carnival for "*Enhancing*" their lives in the Miami Area.

248. *Further*, Judge Cohn, and Magistrate Seltzer, became very active **Accessories After the Fact**, harassing the Elderly,

Severely Disabled, *Pro Se Plaintiffs*, and helping the Carnival
Defendants, *including Carnival's Attorneys*, to completely
**OBSTRUCT** the *Pro Se Plaintiff's Access* to the Miami Court, by
refusing to return to the Plaintiffs, the evidence the
Defendant's stole, and/or figuring a way to replace the evidence
Defendant's Attorneys instructed, and enticed the *Pro Se
Plaintiffs* to get rid of, with Fake Offers of a substantial
Settlement.

249. In a scheme to force the *Elderly, Deathly-Ill Pro Se
Plaintiffs* to drop their lawsuit, Judge Cohn, and Magistrate
Seltzer, while knowing the doctrine in the Eleventh Circuit is
to allow *Pro Se Litigants* to attend a Scheduling Conference by
phone, to assure the *Pro Se Plaintiffs* would not be represented
at the Scheduling Conference, *and denied all Due Process*, Judge
Cohn, and Magistrate Seltzer, knowing, and being fully advised,
that Plaintiffs Tom Hubbert, Linda Hubbert, and Billy Kidwell
were elderly, Deathly-Ill, and could not travel to a Scheduling
Conference in Miami, *without endangering their lives, and
possibly causing their death*, did, without jurisdiction to do
so, violated the doctrine of the Eleventh Circuit and ORDERED
the Elderly, Deathly-Ill Pro Se Plaintiffs to violate their
doctor's ORDERS, and/or advice, and travel as far as Eighteen
Hundred Miles roundtrip, to a Scheduling Conference in Miami.

250. The conduct above denied Plaintiffs equal treatment, and
Equal Protection of the Law, since *Pro Se Litigants* in the
Eleventh Circuit that do not sue Carnival, and do not report
Perjury by Carnival Attorneys to the Court, are allowed to
attend the Scheduling Conference by phone.

251. Plaintiff, Billy Kidwell, was instructed by Carnival Attorney, Catherine MacIvor, both during the November 7, 2012 Settlement Phone Call to his house, and in a number of follow-up E-Mails from Attorney Catherine MacIvor, to represent all of the Pro se Plaintiffs, to draft documents on their behalf, to take actions in the Miami Lawsuit against Carnival on behalf of all the Pro Se Plaintiffs.

252. After enticing Plaintiff, Billy Kidwell, with a substantial Settlement-Reimbursement, and instructing Kidwell to represent all the Plaintiffs, Carnival Attorneys Catherine MacIvor, and Brian H. McGuire, started filing the record with Complaints in nearly every motion for seven (7) months, stating that Plaintiff Billy Kidwell was engaged in the Unlawful Practice of Law, and that all of the motions, and documents filed in the Miami Court by Kidwell, were "*fruit*" of the Unauthorized practice of law.

253. Plaintiffs started researching the law and discovered that Carnival, and Carnival's Attorneys, the Law Firm of Foreman Friedman, Attorneys Catherine MacIvor, Aleksey Shtivelman, and Brian H. McGuire were all part of a conspiracy, in which Plaintiff Billy Kidwell was personally instructed by Attorney MacIvor to act as counsel for all the *Pro Se Plaintiffs*, as the E-Mails from Catherine MacIvor **INDISPUTABLY** prove, and once the named Defendants had tricked Kidwell into believing it was proper, and legal, to represent all the Plaintiffs, the Defendants used the conduct they had instructed Plaintiff Billy Kidwell to engage in, as a defense, now claiming it constituted the unlawful practice of law, rendering all actions by Plaintiffs in the Miami Case illegal, "fruit of a crime", and void.

254. Defendants Micky Arison, Carnival, and the Law Firm of Foreman Friedman knew, *at all times*, that it was illegal for Plaintiff, Billy Kidwell, to represent the other *Pro Se Plaintiffs*, constituting the **Unlawful Practice of Law**, and the named Defendants above conspired together, lied to Plaintiffs, and gave Plaintiff Billy Kidwell **Extremely Bad Legal Advice**, telling Kidwell both during the November 7, 2012 phone call, and instructing Plaintiff Billy Kidwell in writing in a number of E-mails from the Law Firm of Foreman Friedman, telling Kidwell to break the law, and to represent all the other *Pro Se Plaintiffs*.

255. Defendants have completely **OBSTRUCTED** the *Pro Se Plaintiffs* in all "*Meaningful*" Access to the Miami Court, with Defendant's thief of Plaintiff's evidence, by Carnival Attorney Catherine MacIvor Unconstitutionally representing both Carnival, and the *Pro Se Plaintiffs*, during the November 7, 2012 phone call, by intentionally giving Plaintiff Billy Kidwell **BAD LEGAL ADVISE**, tricking him into representing all the Plaintiffs, and then Defendants **ADMITTING** their trickery rendered Plaintiff's Access to the Court for Seven Months illegal, and void, and by all the other wrongful conduct described herein.

## FIRST CAUSE OF ACTION
## VIOLATION OF CONSTITUTIONAL RIGHTS OF PLAINTIFFS
## (UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)

256. The above paragraphs are incorporated by reference.

257. The above referred acts by Defendants were undertaken Under Color of Law.

258. The above referred acts by Defendants violated the Constitutional Rights of Plaintiffs.

259. Plaintiffs were injured as a result of Defendant's Acts.

## SECOND CAUSE OF ACTION
### VIOLATION OF ALL THE PLAINTIFF(S) FIRST AMENDMENT RIGHT OF "MEANINGFUL" ACCESS TO THE COURTS, AND DUE PROCESS, DUE TO DEFENDANTS MICKY ARISON, CARNIVAL CRUISE LINES, THE LAW FIRM OF FOREMAN FRIEDMAN, ATTORNEY CATHERINE MACIVOR, ATTORNEY ALEKSEY SHTIVELMAN, AND ATTORNEY BRIAN H. MCGUIRE, ENGAGING IN A SCHEME TO INSTRUCT, AND ENTICE, PLAINTIFF, BILLY KIDWELL, INTO REPRESENTING ALL THE PLAINTIFFS, RENDERING SEVEN MONTHS OF THEIR ACCESS TO THE COURTS, ILLEGAL, AND NOT "MEANINGFUL" (UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)

260. The above paragraphs are incorporated by reference.

261. Defendants, Micky Arison, and Carnival Cruise Lines, the Law Firm of Foreman Friedman, P.A., and Attorneys Catherine MacIvor, Aleksey Shtivelman, and Brian H. McGuire did, *Under Color of Law*, conspire, and/or, otherwise act, as described herein, to **OBSTRUCT** Plaintiffs rights of "*Meaningful*" Access to the Courts, and to Due Process, by giving Plaintiff, Billy Kidwell, extremely Bad Legal Advice, enticing him with promises of a substantial Settlement into representing all the *Pro Se Plaintiffs*, and then Defendants using the conduct they

instructed Kidwell to engage in, as a defense in nearly every motion Defendant's filed.

262. Defendants, as described herein, completely **OBSTRUCTED** Plaintiff's "*Meaningful*", and lawful, Access to the Court for Seven (7) months with this con game.

## THIRD CAUSE OF ACTION
### VIOLATION OF ALL THE PLAINTIFF(S) FIRST AMENDMENT RIGHT OF "MEANINGFUL" ACCESS TO THE COURTS, AND DUE PROCESS, DUE TO DEFENDANTS MICKY ARISON, CARNIVAL CRUISE LINES, THE LAW FIRM OF FOREMAN FRIEDMAN, ATTORNEY CATHERINE MACIVOR, ATTORNEY ALEKSEY SHTIVELMAN, AND ATTORNEY BRIAN H. MCGUIRE, ENGAGING IN A SCHEME TO STEAL THE PLAINTIFF'S EVIDENCE WITH A FAKE SETTLEMENT-REIMBURSEMENT SCHEME, AS DESCRIBED HEREIN
### (UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)

263. The above paragraphs are incorporated by reference.

264. Defendants, Micky Arison, and Carnival Cruise Lines, the Law Firm of Foreman Friedman, P.A., and Attorneys Catherine MacIvor, Aleksey Shtivelman, and Brian H. McGuire did, *Under Color of Law*, conspire, and/or, engage in a scheme to Steal the Plaintiff's Evidence with a Fake Settlement-Reimbursement Scheme effectively **OBSTRUCTING**, and intentionally violating Plaintiffs Rights of "*Meaningful*" Access to the Courts, and to Due Process of Law.

265. Defendants, as described herein, completely **OBSTRUCTED** Plaintiff's "*Meaningful*", Access to the Court by Stealing Plaintiff's evidence.

## FOURTH CAUSE OF ACTION

**VIOLATION OF ALL THE PLAINTIFF(S) FIRST AMENDMENT RIGHT OF "MEANINGFUL" ACCESS TO THE COURTS, AND DUE PROCESS, DUE TO DEFENDANTS MICKY ARISON, CARNIVAL CRUISE LINES, THE LAW FIRM OF FOREMAN FRIEDMAN, ATTORNEY CATHERINE MACIVOR, ATTORNEY ALEKSEY SHTIVELMAN, AND ATTORNEY BRIAN H. MCGUIRE, ENGAGING IN A SCHEME TO HAVE CARNIVAL'S ATTORNEYS REPRESENT CARNIVAL, AND REPRESENT THE PRO SE PLAINTIFFS, AT THE SAME TIME (UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)**

266. The above paragraphs are incorporated by reference.

267. Defendants, Micky Arison, and Carnival Cruise Lines, the Law Firm of Foreman Friedman, P.A., and Attorneys Catherine MacIvor, Aleksey Shtivelman, and Brian H. McGuire did, *Under Color of Law*, conspire, and/or, engage in a scheme to have Foreman Friedman represent both Carnival Cruise Lines, and the Unrepresented *Pro Se Plaintiffs*, giving their legal instruction, and advice, during the November 7, 2012 phone call to the kidwell Plaintiffs.

268. Said conduct caused grave harm to Plaintiffs and violated their Constitutional Rights.

## FIFTH CAUSE OF ACTION

**VIOLATION OF ALL THE PLAINTIFF(S) FIRST AMENDMENT RIGHT OF "MEANINGFUL" ACCESS TO THE COURTS, AND DUE PROCESS, DUE TO DEFENDANTS MICKY ARISON, CARNIVAL CRUISE LINES, THE LAW FIRM OF FOREMAN FRIEDMAN, ATTORNEY CATHERINE MACIVOR, ATTORNEY ALEKSEY SHTIVELMAN, AND ATTORNEY BRIAN H. MCGUIRE, SUBORNING PERJURY, AND/OR ENGAGING IN PERJURY TO COMMIT A FRAUD ON THE MIAMI COURT**

**(UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)**

269. The above paragraphs are incorporated by reference.

270. Defendants, Micky Arison, and Carnival Cruise Lines, the Law Firm of Foreman Friedman, P.A., and Attorneys Catherine MacIvor, Aleksey Shtivelman, and Brian H. McGuire did, *Under Color of Law*, conspire, and/or, Suborn Perjury, and/or engage in Perjury in a scheme to deny the *Pro Se Plaintiffs* "*Meaningful*" Access to the Miami Court, and to Due Process of Law.

271. Said conduct caused grave harm to Plaintiffs and violated their Constitutional Rights.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF ALL THE PLAINTIFF(S) FIRST AMENDMENT RIGHT OF**
**"*MEANINGFUL*" ACCESS TO THE COURTS, AND DUE PROCESS, DUE TO**
**DEFENDANTS MICKY ARISON, AND CARNIVAL CRUISE LINES, SPENDING TEN**
**TIMES AS MUCH MONEY AS CAPERTON V. A. T. MASSEY COAL CO., INC.,**
**556 U.S. (2009) TO BRIBE, AND WRONGLY INFLUENCE THE MIAMI U.S.**
**DISTRICT COURT**
**(UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)**

272. The above paragraphs are incorporated by reference.

273. Defendants, Micky Arison, and Carnival Cruise Lines, *under color of law*, have spent over ten times as much money in just one city to influence the Courts, than Massey Coal spent in the whole State of West Virginia to influence the Court, which the United States Supreme Court states violates Plaintiff's Due Process Rights.

274. Said conduct caused grave harm to Plaintiffs and violated their Constitutional Rights.


### SEVENTH CAUSE OF ACTION
### VIOLATION OF ALL THE PLAINTIFF(S) FIRST AMENDMENT RIGHT OF *"MEANINGFUL"* ACCESS TO THE COURTS, AND DUE PROCESS, DUE TO JUDGE JAMES I. COHN, AND MAGISTRATE BARRY S. SELTZER, BEING HIGHLY BRIBED BY DEFENDANTS CARNIVAL CRUISE LINES, AND MICKY ARISON, FIXING CASES AGAINST PRO SE LITIGANTS, WITHOUT JURISDICTION TO DO SO, TO REPAY THE CARNIVAL DEFENDANTS
### (UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)

275. The above paragraphs are incorporated by reference.

276. Defendants, James I. Cohn, and Magistrate Barry S. Seltzer, are both highly bribed by the Carnival Defendants, as described in Caperton, and fully aware that it is Unconstitutional, and denies the *Pro Se Plaintiffs* Due Process, and that they are acting without jurisdiction, and in direct violation of the United States Constitution, when they judge cases against the Carnival Corporation, and *Pro Se Plaintiffs*.

277. Defendants, James I. Cohn, and Magistrate Barry S. Seltzer, did knowingly, and intentionally violate the *Pro Se Plaintiff(s)* Constitutional Rights, as described herein.

278. Said conduct caused grave harm to Plaintiffs and violated their Constitutional Rights.

### EIGHT CAUSE OF ACTION

### VIOLATION OF ALL THE PLAINTIFF(S) FIRST AMENDMENT RIGHT OF "*MEANINGFUL*" ACCESS TO THE COURTS, AND DUE PROCESS, DUE TO DUE TO JUDGE JAMES I. COHN, AND MAGISTRATE BARRY S. SELTZER, WITHOUT THE JURISDICTION TO DO SO, VIOLATING THE DOCTRINE OF THE ELEVENTH CIRCUIT, TRYING TO CAUSE THE DEATH OF THE PRO SE PLAINTIFFS, AND/OR FORCE PLAINTIFFS TO DROP THEIR LAWSUIT (UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)

279. The above paragraphs are incorporated by reference.

280. Defendants, James I. Cohn, and Magistrate Barry S. Seltzer, *under color of law*, without jurisdiction to do so, tried to cause the death of the *Pro Se Plaintiffs*, as described herein, or in the very least, illegally, and without jurisdiction to do so, attempted to force the *Elderly, Deathly-ill Pro Se Plaintiffs* to drop their lawsuit against Carnival.

281. Said conduct caused grave harm to Plaintiffs and violated their Constitutional Rights.

### NINTH CAUSE OF ACTION

### VIOLATION OF ALL THE PLAINTIFF(S) CONSTITUTIONAL RIGHT OF EQUAL PROTECTION OF THE LAW, ACCESS TO THE COURTS, AND DUE PROCESS, DUE TO DEFENDANT "UNKNOWN" CDC OFFICIALS KNOWINGLY ALLOWING CARNIVAL CRUISE LINES TO FALSIFY OFFICIAL RECORDS, AND/OR THE CDC FALSIFYING RECORDS, TO COVER UP IMMINENT HEALTH RISKS ON CARNIVAL SHIPS

282. The above paragraphs are incorporated by reference.

283. Defendant, "Unknown" CDC Officials, *under color of law*, allow Carnival Cruise Lines to freely falsify Ships Records, as the CDC falsifies Records to cover up, and deceive the Public, as to Imminent Health Risks on Carnival Ships.

284. Said conduct caused grave harm to Plaintiffs and violated their Constitutional Rights.

**TENTH CAUSE OF ACTION**

**THE POLICY OF "UNKNOWN" CDC OFFICIALS TO CONCEAL IMMINENT HEALTH RISKS, IN THIS CASE, THE UNSAFE POTABLE WATER, THE UNSAFE RECREATIONAL WATER FACITIES, THE IMPROPER MAINTAINCE OF POTABLE WATER TANKS, AND FAILING TO REPORT GASINTESTIONAL OUTBREAKS, TO PROTECT A CORPORATION WITH WRONGFUL INFLUENCE OVER THE CDC, DENIES THE PUBLIC, INCLUDING PLAINTIFFS, FAIR TREATMENT, EQUAL PROTECTION OF THE LAW, AND DUE PROCESS**
**(UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)**

285. The "*Policy*" of the CDC to conceal Imminent Health Risks on Carnival Cruise Ships from the public, and in this case to know the Potable Water System was Unsafe, tested positive for Coliforms, and did not have the documented follow-up test for E-Coli, and therefore pursuant to every standard required an Emergency Boil Alert, and for the CDC to not protect the Public, not to issue a Boil Alert, and not to even make the public aware of the Unsafe water, endangering thousands of passengers, violated Plaintiff's rights to equal, fair treatment.

286. Said conduct caused grave harm to Plaintiffs and violated their Constitutional Rights.


## ELEVENTH CAUSE OF ACTION
## THE FAILURE OF "UNKNOWN" CDC OFFICIALS TO ABIDE BY THE FREEDOM OF INFORMATION ACT, IN A SCHEME TO PROTECT CARNIVAL CRUISE LINES, TO OBSTRUCT PLAINTIFFS IN THEIR ACCESS TO THE COURTS VIOLATES THE FIRST AMENDMENT
## (UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983)


287. The "*Policy*" of the CDC to refuse to abide by the Freedom of Information Act, despite knowing that the records sought by Plaintiffs is necessary for Plaintiff's Access to the Courts, and knowing Plaintiffs are entitled to those records violates Plaintiffs rights.

288. Said conduct caused grave harm to Plaintiffs and violated their Constitutional Rights.


## RELIEF

289. Plaintiffs seek judgment against the Defendants.

290. Each Plaintiff seeks separate Non-Economic Damages in an amount this Court deems fit, for pain, and suffering, mental anguish, loss of their Constitutional Rights, loss of enjoyment of life, consortium, and damage to their family relationships that was caused by being unbearably ill, and grumpy, which caused family arguments, and sometimes hateful words, all

because of the Defendant's Intentional Violations of Plaintiffs
Constitutional Rights, as described herein.

291. For the complete **OBSTRUCTION** to the Miami U.S. District
Court by Micky Arison, the Carnival Corporation, and Carnival's
Named Attorneys herein, Plaintiffs seek the Full Settlement
Amount agreed to on November 7, 2012, which is a Total of Forty
Thousand Dollars to be paid to EACH of the five victims,
including the minor, Hannah Kidwell, which was a Firm Part of
the Settlement Agreement on November 7, 2012, ***with interest from
November 7, 2012***. [Eighty Thousand dollars to the Hubbert
Family, and One Hundred and Twenty Thousand Dollars to the
Kidwell Family.]

292. Plaintiffs seek *"Meaningful"*, and **Adequate**, Punitive
Damages in an Amount no less than the Special Dividend,
Defendant Micky Arison gave himself after severely harming the
*Pro Se Plaintiffs*, the amount of at least Ninety Million Dollars
($90,000,000).

293. Plaintiffs seek that Criminal Charges be referred against
Micky Arison, Carnival Cruise Lines, the Law Firm of Foreman
Friedman, and Attorneys Catherine MacIvor, Aleksey Shtivelman,
and Brian H. McGuire, for Criminal Obstruction in direct
violation of Title 18 § 1503, and violation of the Omnibus
Clause of Title 18 § 1503, **Pro Bono Publico**.

294. Plaintiffs seek an Appointment of a Master, and an
investigation of the ties, bribes, and wrongful influences
between Micky Arison, Carnival Cruise Lines, and the CDC, and
Miami District Court.

295. Plaintiffs seek Issue of an Emergency ORDER requiring that every Carnival Passenger secretly given Unsafe Potable Water to drink, eat, and wash in for a week on the Carnival Legend, and all Carnival Passengers exposed to the Unsafe Recreational Water Facilities on the Carnival Legend from May 8, 2011 to November 11, 2012 be properly contacted by the CDC, and/or the Court, and fully advised of those facts.

296. Plaintiffs seek any, and all, other relief that this Court deems to be appropriate.

Respectfully submitted,

Tom Hubbert, *Pro Se*          July 17, 2013

Linda Hubbert, *Pro Se*          July 17, 2013

Billy Kidwell, *Pro Se*          July 17, 2013

Tana Kidwell, *Pro Se*          July 17, 2013